**DUPREE et al. v. BURLINGTON–ROCK ISLAND R. CO.**

No. 12442.

Court of Civil Appeals of Texas. Galveston.

July 24, 1952.

Rehearing Denied Oct. 9, 1952.

Joel W. Cook, Sidney Wright, both of Houston, for appellants.

Raymond A. Cook and Hall E. Timanus, Houston, Andrews, Kurth, Campbell & Bradley, all of Houston, Thompson, Walker, Smith & Shannon, of Fort Worth, of counsel, for appellees.

CODY, Justice.

This was a consolidated suit, consisting of a personal injury suit by W. I. Dupree against the railroad company for damages resulting from a collision at a railroad crossing between the truck he was driving and a freight train, and of a suit by the owner of the truck so involved in said collision. A jury trial resulted in a verdict which convicted W. I. Dupree and the railroad company's employees of negligence which proximately caused the collision, and the court rendered judgment that the plaintiffs "take nothing". Upon the trial the plaintiffs, who had plead discovered peril as an alternative ground of recovery, seasonably requested that the court submit issues to the jury on discovered peril, and seasonably tendered proper issues thereon, which the court declined to give. There is no contention made that the issues so submitted were not correct as to form. The sole point urged by appellants on appeal is that their pleading and evidence raised the issues of discovered peril, and that the court erred in refusing to submit proper special issues thereon, seasonably requested.

There was evidence upon the trial to the effect: That the collision occurred in

Houston about 2:10 a. m., February 12, 1950, at the intersection of North Main Street and the railroad track of appellee. That the street runs in a general north-south direction, and the railroad track in an east-west direction. That immediately before the collision appellant Dupree was driving a 1941 model Ford pick-up truck belonging to his coappellant, in a southerly direction on North Main Street, and had as guest passengers one Leo Wright, who was seated on the right-hand side of the truck, and one Beatrice Ford, who was sitting between appellant Dupree and Wright. That at the same time appellee's train, consisting of 68 loaded freight cars and one empty, was approaching the crossing from the west, going east, at the rate of 18 miles an hour.

As indicated, we are concerned here only with the evidence bearing on discovered peril. Since it was undisputed that it would require between 800 and 900 feet to bring the train to an emergency stop, and undisputed that the engineer made an emergency application of the brakes as soon as the fireman hollered to him to do so; and undisputed that the truck could not be seen from the engineer's side of the engine; and undisputed that the whistle was not blown to warn appellant Dupree after the fireman saw the danger of a collision; we are here concerned with whether or not, under the evidence, the failure of the fireman to blow the whistle to warn appellant Dupree, raised the issue of discovered peril.

Appellant Dupree's evidence was: That he had been driving at the rate of fifteen miles an hour until he was about ten feet from the crossing. That he then put the truck in second gear as there was a little "hill" sloping up to the track, and he slowed down to ten miles an hour right at the track. That the truck had good brakes, and going fifteen miles an hour on that street he could stop "pretty quick, four or five feet, something like that". That when he saw the bus (about which Wright had testified) he had checked down. That he could and would have stopped if he had seen the train. That he first realized

a train was coming when his guest passengers started hollering and jumping.

Leo Wright, by deposition, testified that before the truck got to the track he thought he saw a light from a car coming into North Main from a side street. That the truck slowed down and he looked and said, "there comes a train". That he, followed by Beatrice, jumped out of the truck, and the train struck the truck, and he did not know whether Dupree jumped or got thrown out of the truck. That it seemed the train hit the truck just at the time he hit the ground and jumped back.

Beatrice testified that as they came to the track and looked up the track, Wright hollered, "There is a train", and at the same time he was jumping out. That when Wright shouted a train was coming, "It was just a little piece from the truck, but when he hollered he was jumping and being excited, he was too, the train was so close to us, I got right out behind him." She testified that she did not see Dupree get out. In answer to the question if she knew whether he was trying to get out, she answered, "When I knowed anything he had pulled off his door, whether he got out I don't know. I know I got out." That she did not see the train before Wright got out. "When he said 'there is a train' the big light got brighter, then I jumped out." That as soon as she jumped out she looked back and the truck was "whirling". That she got out the right door, nearest the approaching train. That at the time Wright jumped, the truck was past the "ice house" and still a "little piece" from the track. As we understand the evidence there was an "ice house", the nearest part of which was fifty feet distant from the nearest part of the track, and which shut off the view of the occupants of the truck so that they could not have seen the approaching train had they looked for it, until they had cleared it. The "ice house" was also an obstruction to the view of the fireman.

There was evidence from which it could have been inferred that it was the primary duty of the engineer to blow the whistle. There was some uncertainty as to whether

the whistle on the engine in question was equipped with a steel rod, or with a cord, but it was undisputed that the equipment for sounding the whistle is so constructed that the fireman can reach up for it and operate the whistle. In any case, the evidence would have supported the conclusion that the whistle was a "means at hand" with which the fireman might have warned, or attempted to have warned Dupree that the train was approaching.

The appellee's fireman's deposition was in part introduced by appellants. From the deposition it was made to appear that the fireman saw the truck momentarily before the collision. That at the time the engine was approximately a car length from the crossing at the time. That he did not know how fast the truck was going. That he had one hand on the bell cord, and one on the firing valve. That the brakes were applied to the locomotive before the truck was struck. That a car length is about fifty or sixty feet. That the brakes are automatic and take hold immediately. That he saw, he thought, a negro man and woman get out of the truck before it was hit. That when he first saw them they were in the truck. That the truck and engine were closing the gaps which separated them from the crossing. That they jumped out of the truck about the time he saw it. That he realized there would be a collision when he saw them "bailing out of the truck". That he yelled, "I think we are going to hit it". That he could not get down to definite feet as to the distance the engine was from the crossing, but it was approximately a car length. That he was looking straight ahead. That the truck was more than ten feet from the track when he first saw it, but he could not say how far. That he saw both the man and woman get out.

■ On the question of discovered peril, the time of discovery is the crucial issue. Turner v. Texas Co., 138 Tex. 380, 159 S.W.2d 112. It will not be imputed or presumed that a defendant or his employee violated the humane principles upon which the doctrine of discovered peril is founded. In order to have made out a case here to go to the jury on discovered peril, the evidence must have supported as a reasonable inference that the fireman discovered and realized Dupree's perilous position in time to have averted the injury. Parks v. Airline Motor Coaches, 145 Tex. 44, 193 S.W.2d 967. "There are cases which hold that actual discovery of the injured party's perilous situation may be established by circumstantial evidence. But in all such cases the circumstances must be such as to fairly warrant the inference that there was an actual discovery or actual knowledge of the perilous situation. The burden of proof is on the plaintiff in such cases to establish the facts warranting recovery upon this issue, including the fact of actual discovery of the peril." Galveston, H. & S. A. Ry. Co. v. Price, Tex.Com.App., 240 S.W. 524, 528, opinion adopted by Supreme Court.

■ Where the rule requires actual knowledge of a fact by an employee to hold his employer, it is not enough to show that, had the employee exercised ordinary care, he would have had knowledge of such fact. However, the employee's testimony that he did not have such knowledge does not foreclose the plaintiff. For if there are any facts in evidence from which it could be reasonably inferred that the employee had knowledge, the court should have allowed the case to go to the jury for the jury to determine whether the employee had actual knowledge. See Banana Supply Co. v. Driskell, Tex.Civ.App., 250 S.W.2d 595. Consequently, the fireman's testimony that he did not discover and realize Dupree's position of peril until he saw his guest passengers get out of the truck, one after the other, is not necessarily binding on appellants. On the other hand, though the testimony of an interested witness be discarded, the court is not authorized to draw from such testimony the opposite of what it imports. Texas & N. O. Ry. Co. v. Grace, 144 Tex. 71, 188 S. W.2d 378.

The jury could have inferred from the fact that there was nothing to obstruct the fireman's view after the truck had cleared the "ice house", that the fireman discovered the truck, but the fact the fireman could and should have discovered the

truck, will not support the further inference that he realized its perilous position in time to have prevented the collision. Id. Actually the jury in answer to a special issue did find that the fireman did not keep a proper lookout. Such a finding convicted the fireman of passive negligence, which was primary negligence, and for which Dupree could have recovered, had he not barred himself by his own contributory negligence of failing to keep a proper lookout. The burden was upon Dupree to go further than to prove that the fireman failed to keep a proper lookout which, had he done, would have furnished him with knowledge of the perilous situation in time to have avoided the injury. The burden was on Dupree to affirmatively prove that the fireman had actual knowledge of the perilous situation in time to avoid the injury. Of course the burden was not on Dupree to prove by words spoken by the fireman that the fireman had such actual realization in time to have avoided the injury. But the burden was on Dupree to prove such affirmative realization at least by the proof of facts from which same could have been reasonably inferred. See Driskell case, supra.

■ Dupree is entitled, of course, to have the evidence viewed in the light most favorable to him.

There was evidence from which it could have been inferred that the whistle was a means at hand by which the fireman might have tried to warn Dupree. It is true that the fireman's testimony was to the effect that he did not discover the perilous situation until the guest passengers had debarked, or were in the act of getting out of the truck. According to the evidence of Dupree, he then realized a train was coming, that is, when Wright so warned him and jumped. If the fireman's testimony was true, that he did not realize Dupree's danger until the guest passengers began jumping from the truck, then it would have been futile to sound the whistle, for by that time Dupree realized the danger. However, appellants insist that from the fireman's own testimony it could be reasonably inferred that he realized the danger of a collision before Wright jumped from

the truck. The fireman testified that at the time he notified the engineer of the danger, and the engineer applied the brakes, the engine was a car length, or sixty feet from the point of collision. The train was traveling eighteen miles per hour, or 26.4 feet per second. Appellants' evidence shows that the truck was traveling at the rate of fifteen miles an hour, or 22 feet per second, until it was within ten feet of the track, when it slowed to ten miles per hour, or 14.7 feet per second. Then, according to appellants' figures which appellee does not challenge, while the train was closing its gap of 60 feet to the crossing, the gap which separated the truck from the crossing must have been 33⅓ to 50 feet. The guest passengers each in effect testified that the truck was right on the track when he or she got out. Their evidence showed, however, that Wright first cleared the truck, and that Beatrice followed behind him out of the same door on the train side of the truck, and while doing so observed Dupree try to get out of his door ("he had pulled off his door").

■ Exact figures based on the estimated time it requires a vehicle, moving at an estimated rate of speed, to move an estimated distance—estimates made in a brief interval of time by witnesses laboring under excitement—are none the less valid evidence. Considered in the light most favorable to appellants, two seconds elapsed between the time the fireman realized the perilous position of Dupree and the collision. The evidence showed that the whistle cord was located so that, in order to sound the whistle, the fireman would have to rise up and reach for it. To do this would require an interval of time. It would have then required an interval of time for Dupree to realize the significance of the whistle, and react to it.

■ On the other hand, the physical facts establish that the collision did not occur as instantly as it seemed to Wright when he leaped from the truck. Dupree had knowledge and realization of his danger when Wright yelled and leaped from the truck. There was time thereafter for Beatrice to observe that Dupree was trying

to open the door of the truck, and time for her to safely follow Wright out of the door through which he had escaped.

Careful consideration of the evidence constrains us to hold that the court did not err in holding that there was not evidence to go to the jury authorizing the submission of special issues on discovered peril.

Judgment affirmed.