R. T. HERRIN PETROLEUM TRANS. CO., ET AL V. LAURA PROCTOR.

No. A-7304. Decided July 13, 1960.
Rehearing Overruled October 19, 1960.
(338 S.W. 2d Series 422)

*Mays, Leonard & Moore,* of Sweetwater, *Leachman, Gardere, Akin & Porter* and *Henry D. Akin,* all of Dallas, for petitioner, R. T. Herrin Petroleum Transport Company.

The Court of Civil Appeals erred in refusing to submit respondent's requested issue that contained some of the elements of petitioner's liability under the doctrine of discovered peril. Terry v. English, 112 S.W. 2d 446; Sugarland v. Daily, 143 S.W. 2d 931; Wilson v. Southern Traction Co., 111 Texas 361, 234 S.W. 663.

*James Pearson,* of Sweetwater, for respondent, Mrs. Laura Proctor. Cited; Dallas Railway & Terminal Co. v. Bishop, 153 S.W. 2d 298; Montgomery v. Houston Elec. Co., 135 Texas 538, 144 S.W. 2d 251; Sisti v. Thompson, 149 Texas 189, 229 S.W. 610.

MR. JUSTICE NORVELL delivered the opinion of the court.

This action arose from a truck-automobile collision which took place on State Highway No. 70 about four miles south of Sweetwater, Texas at approximately 7:00 o'clock on the evening

of August 27, 1957. Orval H. Proctor and a woman companion were riding in the automobile. Both were killed. Mrs. Laura Proctor, the mother of Orval H. Proctor, a single man with no children, brought this action for wrongful death under Article 4675, Vernon's Ann. Texas Stats. As defendants, she named Curtis Cleven Barron, the driver of the truck, and his employer, R. T. Herrin Petroleum Transport Company, the owner of the truck. Judgment in the trial court was for the defendants upon jury findings that Orval H. Proctor was guilty of contributory negligence. The Court of Civil Appeals reversed the judgment and remanded the cause for another trial upon two holdings: First, the trial court erred in failing to submit plaintiff's special requested issue No. 1 which contained several questions embracing the theory of discovered peril, and secondly, the trial court erred in admitting testimony concerning a partially filled whiskey bottle handed to the Sheriff of Nolan County while he was at the scene of the collision, aiding in the investigation of the accident. Proctor v. R. T. Herrin Petroleum Transport Co., 322 S.W. 2d 42.

Application for writs of error were filed by both appellant and appellees in the Court of Civil Appeals and were granted by this Court. As the parties occupy dual positions in this Court, we will use the trial court designations or refer to them by name.

In her application for writ of error, plaintiff contends that the jury's answers to certain issues submitted to the jury, when considered in connection with the undisputed facts disclosed by the record, entitle her to judgment under the discovered peril theory despite the jury's finding that Proctor was contributorily negligent.

■ In our opinion the present record does not present a case of discovered peril. This holding disposes of plaintiff's assertion, above stated, that she was entitled to judgment upon the jury's answers to the issues submitted to it as well as her contention that the trial court erred in refusing to submit her special Issue No. 1 embracing the theory of discovered peril. However, the holding of the Court of Civil Appeals, upon the evidence point involving the whiskey bottle was correct and necessitates an affirmance of the judgment of the Court of Civil Appeals. Upon another trial the district court will be governed by this opinion.

At the outset of our discussion of the case, it should be pointed out that from the plaintiff's standpoint, this case was tried upon alternative and somewhat conflicting theories, a

situation which would unlikely develop in any suit except a death case or one in which neither the driver nor an occupant of one of the colliding vehicles was able to testify. The conflict of theory lies in the assertion upon the negligence—contributory negligence feature of the case that the driver of the truck was propelling his vehicle upon the highway at a highly dangerous and excessive rate of speed, while plaintiff's decedent was free from negligence contributing to the collision. On the other hand, it is contended upon the discovered peril feature of the case that the truck driver's speed was such that he had adequate time to prevent the collision by the means at his disposal despite the decedent's negligence. In the usual case where both the drivers of the colliding vehicles testify, the conflict of theory disclosed by the present record does not appear as the usual thing, but we would have a case of excessive speed by the defendant (from the standpoint of the plaintiff's testimony) or the opposite, that is, moderate speed allowing time for action on the part of the defendant to prevent the collision. In other words, the parties by their own testimony would generally be committed to consistent rather than conflicting theories. The death of Proctor and his companion worked a change in the usual situation.

It should also be borne in mind that as this case will have to be retried because of the admission of improper testimony, what we say concerning the applicability of the doctrine of discovered peril is based upon the record *now before us* and is for the guidance of the trial court in the event (which at the present time seems probable) that the testimony upon a retrial will be substantially the same as that disclosed by the present record. However, different or additional evidence may call for the application of different rules of law.

■ The discovered peril contentions raise a comparatively narrow issue. In Ford v. Panhandle & Santa Fe Ry Co., 151 Texas 538, 252 S.W. 2d 561 this Court said:

"The quantum of proof required of the plaintiff on these elements of discovered peril in order to entitle him to have them submitted to the jury was such facts and circumstances as taken together with all reasonable inferences therefrom constituted some evidence of probative force of their existence. White v. White, 141 Texas 328, 172 S.W. 2d 295; Stevens v. Karr, 119 Texas 479, 33 S.W. 2d 725; Fitz-Gerald v. Hull, Texas Sup., 237 S.W. 2d 256."

We are here concerned with permissible "reasonable inferences" under the rule above stated.

■ In the language of the special issues employed in submitting discovered peril cases in Texas, we say that one who discovers another in a perilous position and fails to use the means at his disposal to prevent injury is liable for the injuries resulting from such failure. Upon discovery of peril, a new and immediate duty arises to prevent injury and it is the breach of that duty which gives rise to liability.

Plaintiff's requested special issue No. 1 consisted of six interrogatories, lettered A to F inclusive. For our purposes here it may be considered that the evidence would compel a finding that (A) Proctor was in a perilous position shortly before the collision; (B) that Barron, the driver of the truck, discovered that Proctor was in a perilous position, and (C) realized that Proctor would probably not free himself from such perilous position in time to avoid injury.

The next question contains the controlling inquiry in this case:

"(D)   Do you find from a preponderance of the evidence that after Defendant discovered the peril of Orval H. Proctor, if you have so found, and realized that Orval H. Proctor probably would not free himself from such perilous position in time to avoid injury, if you have so found, within such time and distance that by the exercise of ordinary care in the use of all the means at his command consistent with the safety of himself and his truck, he, the Defendant, could have avoided the collision?"

Parts E and F of requested special issue No. 1 were conditioned upon an affirmative finding to Part D and inquired as to negligence and proximate cause.

The collision occurred upon a stretch of highway running approximately north and south between two curves about 1,000 feet apart. The truck involved consisted of a tractor-trailer combination. The tractor was equipped with a Diamond T diesel motor, with single wheels in front and dual wheels in the rear. A total of six tires were on the tractor. The trailer consisted of a large gasoline tank having a capacity of 5980 gallons mounted upon four sets of dual wheels—eight tires. This trailer was 32 feet in length which added to the length of the tractor — ten

feet — made an overall length of 42 feet. There were fourteen tires upon the ground mounted upon eight wheels. All wheels were equipped with air brakes. The car in which Proctor was riding was a 1954 Plymouth 4-door sedan. He was traveling in a southerly direction. The truck was empty and traveling in a northerly direction toward Sweetwater. Shortly before the collision the left front tire, on the Plymouth blew out or suddenly went flat which made it impossible for Proctor to control the Plymouth car. For a time, although not at the instant of collision, the car as it approached the truck was over on the east or Proctor's left-hand side of the road. The undisputed physical evidence in the case, including photographs of the truck and car taken after the collision, show that the vehicles met with a terriffic impact. Two of the photographs admitted in evidence are shown herewith:

The only eye witness to the collission was Curtis Barron, the driver of the truck. The only other evidence which gives an indication of how the collision occurred was the testimony of Herman Seale, State Highway Patrolman, who made a complete investigation of the collision. In connection with Mr. Seale's testimony numerous photographs were introduced in evidence.

■ Barron was an interested witness and his testimony was not binding upon a jury. Ford v. Panhandle & Santa Fe Ry. Co., 151 Texas 538, 252 S.W. 2d 561. However, testimony from an interested witness, while it need not be accepted as true by a jury, is not evidence that the exact opposite of what the witness said is true. There must be some circumstance supporting the conclusion that a situation opposite to that depicted by the witness actually existed.

Barron testified as follows:

"Q: All right, Mr. Barron, would you describe the accident, in your own words, to the jury, about where you were? A: Where I was?

"Q: Yes. When you discovered Mr. Proctor coming up. A: Well, it was on that hill, coming out there south of Sweetwater, and I was coming this way, and I was coming around a little curve. He was coming to meet me. He was headed north, and I didn't pay much attention to him then, and all of a sudden he was over in my lane, because I saw the car dip and go left, then I saw his hub cap fly off. So I reacted like anybody else would. I put on the brakes, but he came on into me anyway.

\* \* \* \*

"Q: And like you testified in your deposition and right here, you were just starting to go round that curve and he was on the other curve, is that right? A: I say when I saw the car—

"Q. Yes. A:—I was coming around the curve and he was coming around the other one.

"Q: That's right. All right, did you put your brakes on immediately? A: When I saw him in my lane, yes, sir, not when I first saw him.

"Q:Well, when you saw that car lurch and sway, you knew that he was in trouble, didn't you? A: Yes, sir, when I seen him in my lane.

"Q: And it was all—when it lurched and swayed and came over in your lane, it was just like that, wasn't it (indicating)? A: Yes, sir.

"Q. So you knew immediately that he was in trouble, didn't you? A: Yes, sir. I applied my brakes.

"Q: And you knew that there was going to be an accident unless somebody did something to avoid the accident, didn't you? A: Well, I done all I could, sir."

Herman Seale, the State Highway Patrolman, testified that from the physical markings upon the highway, such as skid and tire marks and gouged out portions of the hard surface of the pavement, it appeared that at the time of the collision the left front wheel of the tractor was five feet and one inch west of the center line of the road and that the right front wheel was approximately on the center line of the road. The left front wheel of the Plymouth was about two feet west of the center line. This point of collision was approximately 600 feet from the entrance of the north curve which the Plymouth automobile

rounded going south and about 400 feet from the south curve which the truck traveled going north. The truck skid marks ended a few feet from the point of collision which indicated that the driver had been "thrown over so that he lost control of his brakes" or that a brake line had broken. After the accident, there was no air in the tractor and it appeared that the air line had been broken. The marks upon the pavement, as disclosed by the photographs, indicated to Seale that the tractor-trailer truck had jackknifed immediately prior to the collision accounting for the position of the tractor upon the west or the truck's left hand side of the highway. Barron, the truck driver, testified that he did not knowingly turn the truck to the left. According to Seale a tractor-trailer outfit would not jackknife if the brakes were in proper order.

Seale also testified that the dual wheels on the right side of the trailer left skid marks 222 feet in length while the left duals marked the highway for a distance of 167 feet; that a free-rolling or unbraked tire would not mark the pavement unless it was practically flat; that the left front tire of the automobile left a discernible wavy line upon the pavement which was 375 feet in length. From a point 375 feet from the point of collision, the left front wheel of the automobile traveled 75 feet upon the west side of the highway, then crossed over the center stripe to the east side (the automobile's left-hand side) and directly into the path of the oncoming truck. After continuing for 273 feet on the trucks side of the road, the left front wheel of the automobile recrossed the center line and onto the west side of the road about 30 feet from the point of collision. The right front wheel, because of the jerking of the automobile caused by the flat tire, also marked the highway for a distance of 192 feet from the point of collision. For a distance of 126 feet the right tire marked the pavement on the east side of the highway. Sixty-six feet from the point of collision the right wheel passed over the west side. For 36 feet the automobile straddled the center line and for the last 30 feet before collision the automobile was on the west side of the highway.

The Court of Civil Appeals indicated that there was evidence that Barron could with safety have pulled off the pavement on the shoulder and *thereby avoided the collision*. The plaintiff also suggests that Barron could have applied the brakes sooner than he did or that he could have applied just the right amount of pressure to the brake pedal so that the air brakes would have caused the wheels to turn slowly but not lock, thus diminishing the time required to stop the truck. There was evidence that a

braked but slowly turning wheel exerts more friction on the road surface than does a sliding or skidding wheel.

■ We are unable to agree with any of these theories. In order to charge one with liability under the doctrine of discovered peril, there must exist a clear chance to avoid injury which could have been reasonably perceived by the party sought to be held. Terry v. English, 130 Texas 632, 112 S.W. 2d 446; Schuhmacher Co. v. Posey, 147 Texas 392, 215 S.W. 2d 880; Morreale v. Cohen, 158 Texas 291, 310 S.W. 2d 737; Welch v. Ada Oil Co., Texas Civ. App., 302 S.W. 2d 175, wr. ref. n.r.e.

It is undisputed that immediately before the collision the driver of the Plymouth automobile was unable to control the movement and direction of his car. It careened down the highway passing over the center line and directly into the path of the oncoming truck. The truck driver as he observed the car's movements two hundred or three hundred feet ahead of him could only guess that the shoulder of the road would be a safe place for his rather cumbersome vehicle and that he could avoid the oncoming car by turning onto the shoulder. From the standpoint of appearances immediately before the collision, the movements of the car were wholly unpredictable. From the truck driver's standpoint, there was no way of anticipating that the driver of the car would be able to control its leftward veer caused by the drag of the flat tire which had already carried the automobile over the center line of the highway onto its wrong side of the road. Judging from the movements of the car, it would be entirely reasonable to apprehend that its leftward course would continue and that the vehicle would cross the shoulder of the road and perhaps continue its course into the borrow ditch.

It is urged that the pavement marks left on the highway indicated that Proctor, the driver of the automobile, was gradually bringing his car back to his right hand side of the highway, but this development, if such it can be called, was hardly discernible to the driver of the truck. In most cases of this kind some way or means whereby collision could have been prevented may be figured out,—after the catastrophe has occurred. Except for the circumstance that the collision may have taken place at a different point we could say that had Barron not applied his brakes and paid no attention to the automobile there would have been no collision. When the impact occurred, the car was on its right hand side of the road although it had been there for a distance of only thirty feet. Possible action by either Proctor or Barron that would have avoided the collision involves us in conjecture and guess work.

By accepting Barron's estimate of the speed of the truck — 45 miles per hour, which estimate she attempted to contradict and impeach in the trial court—and drawing an analogy between the speed of the truck and the speed of the unbraked car, plaintiff reaches the conclusion that the speed of both vehicles was approximately 45 miles per hour. They were approaching each other at a rate of ninety miles per hour or 132 feet per second. There is evidence which if credited would place the speed of the truck at sixty miles per hour and that of the automobile at eighty miles per hour with the rate of approach being 205.33 feet per second. The maximum distance between the vehicles when the truck driver observed the lurch of the car and the blown out tire was about 655 feet allowing for the reaction time of the driver. Whether we regard this period as being about five seconds under the ninety miles an hour approach or three seconds under a 140 miles per hour approach, the result is the same, because whether the time be three or five seconds, there was no way for the truck driver at the commencement of the time period to anticipate the course of movement of the automobile during such period and its position with reference to the highway at the end thereof.

Plaintiff's argument concerning the time of applying the brakes and the method of doing so much fail for like reason. There is nothing in the record to indicate that had the truck actually stopped before the collision, that the unfortunate occurrence would have been avoided. The photographs in evidence graphically demonstrate that had the truck been stationary the automobile would have struck it with terrific impact. The question of whether Barron could have stopped his truck or whether Proctor would have been able to avoid collision with a stationary object is left to pure conjecture.

The most marked distinction between the present case and Ford v. Panhandle & Santa Fe Ry. Co., 151 Texas 538, 252 S.W. 2d 561 is that in the Ford case the movements of the automobile under the evidence were reasonably predictable. It was observed approaching the crossing at 15 miles per hour and at a distance of 300 feet therefrom. By mathematical calculations, it could be demonstrated that if the automobile continued upon its observed course and at its estimated rate of speed, as could reasonably be expected, "the jury could reasonably have concluded that an application of the emergency brakes at any time before the train reached the crossing would have afforded the necessary time for the automobile to pass over the track unharmed." In the present case, the probable course of the automobile could

not be anticipated and there is no reasonable basis for saying that an earlier setting of the brakes on the truck or the swerving to the right onto the shoulder of the highway would have avoided injury. There was no last chance to prevent injury, let alone a clear one. As to the development of the doctrine, particularly in Texas, see Davies v. Mann, 10 Mess & W. 546, 152 Eng. Reprint 588, 19 Eng. Rul. Cases 190; Texas & Pacific Ry. Co. v. Chapman, 57 Texas 75; Missouri Pacific Ry. Co. v. Weisen, 65 Texas 443; Wilson v. Southern Traction Co., 111 Texas 361, 234 S.W. 663; Sugarland Industries v. Daily, 135 Texas 532, 143 S.W. 2d 931; Turner v. Texas Co., 138 Texas 380, 159 S.W. 2d 112; Burton v. Billingsly, Texas Civ. App., 129 S.W. 2d 439, wr. ref.; Gulf, Colorado & Santa Fe R. Co. v. Pratt, Texas Civ App., 262 S.W. 2d 775, wr. ref. n.r.e. 30-B Texas Jur. 326, Negligence, section 105. The last chance must be a clear one. Schuhmacher Co. v. Posey, 147 Texas 392, 215 S.W. 2d 880; Surkey v. Smith, Texas Civ. App., 136 S.W. 2d 893, wr. ref.; Martin v. Texas & New Orleans R. Co., Texas Civ. App., 236 S.W. 2d 567, wr. ref.; Dupree v. Burlington-Rock Island R. Co., Texas Civ. App., 251 S.W. 2d 559, wr. ref.; Welch v. Ada Oil Company, Texas Civ. App., 302 S.W. 2d 175, wr. ref. n.r.e.; Waldeck v. Watts, Texas Civ. App., 326 S.W. 2d 913, wr. ref. n.r.e.

While numerous theories and arguments are advanced with skill and vigor by plaintiff's counsel, we are constrained to hold that all of them embrace conjecture, surmise and untenable inferences. From what has been said it follows that the trial court did not err in failing to submit plaintiff's special issue No. 1 embracing the doctrine of discovered peril, nor in refusing to grant judgment for plaintiff as a matter of law upon the theory that the undisputed evidence taken in connection with certain jury findings established defendants' liability under the doctrine of discovered peril. It is unnecessary for the purposes of this opinion to analyze the evidence relied upon by plaintiff to support certain jury findings upon which plaintiff relies to support her theory of recovery last mentioned.

In the Court of Civil Appeals the plaintiff contended that the trial court erred in admitting evidence that Orval H. Proctor had been convicted of the penal offense of driving while intoxicated and in admitting testimony relating to a partially filled whiskey bottle. The lower appellate court did not pass directly upon the question of the admissibility of Proctor's convictions for driving while intoxicated because in the opinion of the Court, this question need not arise upon a retrial of the case. However, if the acceptance of testimony concerning the whiskey

bottle in evidence was erroneous, as we believe it was, the presence of the evidence relating to the D.W.I. convictions becomes important upon the question of harmless error under Rules 434 and 503, Texas Rules of Civil Procedure. For that reason we will set out the development of the evidence in chronological order.

The plaintiff, Laura Proctor, upon cross-examination testified that her deceased son, Orval H. Proctor, drank some, but had quit about two weeks before he was killed; that he had spent about two months in jail during May, June and July of 1957 and paid fines for being drunk.

R. S. (Ted) Lambert, the Sheriff of Nolan County, testified that he "had to handle" Proctor on a D.W.I. charge. Upon objection by plaintiff's counsel, the Court ruled that such evidence "will be admitted on the question of contribution that he (Proctor) might have made (to his mother's support), * * * but not as to any negligence at this time." It is generally held that unless there is some evidence that a party was intoxicated at the time of a collision or actionable occurrence, testimony as to past instances of drunkedness is inadmissible to establish as an independent proposition that a party was probably drunk upon the occasion in question. Tripp v. Watson, Texas Civ. App., 235 S.W. 2d 677, wr. ref. n.r.e., McCarty v. Gappelberg, Texas Civ. App., 273 S.W. 2d 943, 46 A.L.R. 2d 93, wr. ref. n.r.e. See also, the appended annotation in the A.L.R. reports. McCormick and Ray, Texas Law of Evidence (2d Ed.) section 1512.

Under the rulings of the trial court the D.W.I. convictions were received for a limited purpose and not as evidence of Proctor's intoxication at the time the wreck occurred. The whiskey bottle was first mentioned upon the cross examination of Herman Seale, the State Highway Patrolman, who testified that the sheriff had handed him a partially filled pint bottle of whiskey. Objection was made to this testimony but it was tentatively admitted by the trial judge subject to its being "connected up."

The sheriff was first examined with reference to the whiskey bottle in the absence of the jury where his "connecting up" testimony was somewhat stronger than that later adduced before the jury. The sheriff testified in the presence of the jury that he did not smell whiskey on the bodies of the occupants of the car, although he didn't examine them for that; that he detected no odor of whiskey in and about the car; that someone either

handed him or called his attention to a partially filled bottle of whiskey which he delivered to the State Highway Patrolman. The sheriff, in his examination outside the presence of the jury said that, "There was so much confusion, everybody was running up wanting to know all about the whole outfit and I was kind of confused; * * * there were seventy or eighty people there that had gathered, and they just flocked me in."

In the presence of the jury Lambert testified as follows:

"Q: In other words, Ted, you are not testifying where the bottle was found at all, are you? A: No. I couldn't testify to that, Jim.

"Q: The only thing that you know is that some bystander handed it to you? A: He either called my attention to it or handed it to me. I can't recall. So much confusion there.

\* \* \* \*

"Q: So as far as where the bottle was found, you have no idea? A: I couldn't testify to that."

While there was some testimony by the sheriff that would indicate that the bottle was found somewhere in the vicinity of the wreck, his final conclusion as to the matter was that there was so much confusion in and about the wreck that he could not testify as to where the bottle was found.

Plaintiff's objection that the whiskey bottle was not connected with Proctor was well taken. Pilot Life Ins. Co. v. Wise, 5th Cir. Ct. of App., 61 F. 2d 481; Dyer v. Missouri State Life Ins. Co., 132 Wash. 378, 232 P. 346; 32 C.J.S. 457, Evidence, section 607

This present case is not analogous to Brown v. Kirksey, Texas Civ. App., 145 S.W. 2d 217, no writ history, in which a can with beer running out of it was picked up near the scene of a collision between an automobile and a 77 year old pedestrian. In the Kirksey case a reasonable connection between the driver of the car and the beer can was established, based upon a permissible inference. Likewise, this is not a case in which there was some evidence obtained by an examination of Proctor's body, his automobile or otherwise that would raise an issue of intoxication independent of the circumstance of the finding of the whiskey bottle. Cf. McKenzie v. Ruggles Const. Co., 129 Kan. 759, 284 P. 407.

In the light of the entire record, particularly the evidence of past intemperateness on the part of Proctor which was admitted for a limited purpose, it is our opinion that the introduction of the whiskey bottle was clearly prejudicial to plaintiff. It is probable that the jury reasoned that Proctor was under the influence of intoxicants at the time of the collision despite the fact there was no competent evidence in the record to support this conclusion. Pilot Life Ins. Co. v. Wise, 5th Cir. Ct. of App., 61 F. 2d 481. It would be only one more step to say that because of intoxication Proctor drove his car at an excessive rate of speed as found by the jury and hence was guilty of contributory negligence.

The judgment of the Court of Civil Appeals reversing the judgment of the District Court and remanding the case for a new trial is affirmed. Upon another trial the District Court will proceed in accordance with the holdings set forth in this opinion.

Opinion delivered July 13, 1960.

MR. JUSTICE CALVERT, concurring.

By their holding that the evidence in this case does not raise the issue of discovered peril the majority have usurped a function long held by this Court to belong to a jury. The function usurped is that of deciding whether the exercise of ordinary care in the use of *all the means* at hand to avoid an injury requires the use of an available means alternative to, or in combination with, the means selected by the actor.

As long ago as San Antonio & A. P. Ry. Co. v. Hodges, 102 Texas 524, 120 S.W. 848, 849, we stated the rule in these words:

"But, whenever a real question exists under evidence whether or not precautions should have been taken other and different from those which the party judged to be sufficient and therefore took, *that question is for the jury to decide by applying the standard of care of a person of ordinary prudence, and it should be left to the jury by the charge.*"

The rule was analyzed and restated in Missouri K. & T. Ry. Co. of Texas v. Reynolds, 103 Texas 31, 122 S.W. 531, 532, as follows:

"What the law requires is the exercise of the care to avoid injury which persons of ordinary prudence would use in such

emergencies. This care must, of course, be proportioned to the danger, *but what acts and expedients constitute it in a given situation is a question to be determined by the jury, and not by the court.* San Antonio & A. P. Ry. Co. v. Hodges, 120 S.W. 848; 2 Thompson on Neg. Secs. 1734, 1738. The evidence shows that several things suggested themselves as proper to be done and that some of these were done, or attempted, by the employés to avert the collision. Was it best for the employés to do as the jury might find they did, or that they should have directed their attention more to stopping of the engine? Was what they did in the emergency in which they thus suddenly found themselves the exercise of that kind and degree of care that men of ordinary prudence would have used in their situation? *We think it quite clear that these are questions to be determined by the jury,* and to be determined from the facts and circumstances as they existed and appeared at the time, and not by looking backward and inquiring merely whether or not the event proved that some other course than that pursued would have been more effectual in preventing the injury."

In keeping with the foregoing rule, it has been held in a long series of cases that liability under the discovered peril doctrine can be predicated on the failure of train operatives, after discovery of a plaintiff's peril, to blow a whistle or ring a bell, even though such operatives are doing all in their power to bring the train to a halt and thus avoid injury. Trochta v. Missouri, K. & T. Ry. Co., Texas Com. App., 218 S.W. 1038; Houston & T. C. Ry. Co. v. Stevenson, Texas Com. App., 29 S.W. 2d 995; Houston E. & W. T. Ry. Co. v. Sherman, Texas Com. App., 42 S.W. 2d. 241; Texas & N. O. R. Co. v. Krasoff, 144 Texas 436, 191 S.W. 2d 1; Texas & N. O. R. Co. v. Foster, Texas Civ. App., 266 S.W. 2d 206, writ ref. n.r.e.

Almost squarely in point on the facts with this case is Wilson v. Barnes, Texas Civ. App., 224 S.W. 2d 892, in which this court refused writ of error thereby making the decision and opinion as authoritative as our own. In that case the defendant's ambulance, traveling in its own lane of traffic, struck the plaintiff's automobile which was traveling in the opposite direction and in the wrong lane of traffic. Discovered peril issues were submitted to the jury, were answered favorably to the plaintiff and were attacked on appeal as having no support in the evidence. The evidence reflected, as does the evidence in the instant case, that the defendant's employee applied his brakes some distance before reaching the point of collision and remained in his own traffic lane. The Court of Civil Appeals nevertheless

pointed to the width of the traffic lane and a graveled road shoulder as affording the defendant space for pulling to the right to avoid the collision, and said: "The jury could have concluded from such testimony alone that by a reasonable effort to guide the ambulance to the right after he discovered the perilous position of the Barnes car * * * he could have avoided striking the Ford automobile. Under the facts in this case we are of the opinion that the evidence raised the issue of discovered peril and that the findings were not against the preponderance of the evidence thereon." 224 S.W. 2d 894. The only factual difference between Wilson v. Barnes and the instant case is that in this case there was a flat tire on the plaintiff's automobile. That difference in the facts can afford no distinction in law. The future course a motorist traveling on the wrong side of a street or road will take — whether straight ahead, to the left or back to his own right side — is just as unpredictable when there is no flat tire on his car as when there is. The majority avoid having to come to grips with a clearly conflicting decision by simply failing to take cognizance of it.

The holding of the majority seems to rest upon the proposition that since the driver of the truck could not be certain just what course Proctor's car would take, a jury will not be permitted to say, from common experience or otherwise, what steps a reasonably prudent person in the driver's situation would have taken to avoid the collision; that since the driver applied his brakes, we will not permit a jury to say that a reasonable prudent person would also have driven his truck to his right off of the pavement and onto the graveled shoulder of the roadway. I submit that the holding is new to the doctrine of discovered peril, has no precedent in any of the long list of cases cited by the majority and runs counter to the cases hereinabove cited. It cannot be harmonized, for instance, with what was said in Trochta v. Missouri, K. & T. Ry. Co., 218 S.W. 1038, 1039 by the Commission of Appeals:

"To relieve defendant of liability on the ground that the engineer did what *he thought proper* in the emergency to avoid the injury would in effect, abolish the doctrine of discovered peril, except in cases of willful injury. The test of liability is not whether the engineer after discovering the peril of deceased acted in good faith in an effort to avoid the injury, but whether he acted as a man of ordinary prudence would have acted under the circumstances. *This was a question to be determined by the jury from the evidence.*"

Not a single one of the cases cited by the majority is apposite. A number are cited only for the purpose of showing development of the discovered peril doctrine in Texas. They, of course, have no precedential value in this case. A number are cited for the proposition that the last clear chance doctrine only applies when the last chance is a clear one. All in that group simply hold that for recovery to rest on the doctrine of discovered peril, discovery must have occurred when there was yet time to avoid injury. Neither are they controlling here. Inasmuch as Barron had time after discovering Proctor's peril to apply his brakes and skid his truck some 222 feet before reaching the point of collision, he obviously also had time in which to drive his truck onto the shoulder of the road. Moreover, there is evidence in the record that at all material points the road shoulder was 8 to 9 feet wide and was graveled and hard, thus offering ample room and a safe area for the driving of the truck onto the shoulder with safety to the driver and the truck.

There is, of course, a certain amount of speculation in any finding that a particular act or omission in a given fact situation was negligent and a proximate cause of a collision. The need for speculation here as a basis for recovery is no greather than in the usual fact situation surrounding an automobile collision. The evidence and the reasonable inferences furnish us this fact situation: Barron, the truck driver, saw Proctor's tire blow out and his car pull into the wrong traffic lane directly in the pathway of his truck; Proctor would not likely get his car back into his own traffic lane in time to avoid a collision; unless he, Barron, acted to avoid it, a collision would occur; he could continue to drive straight ahead, using no available means to avoid the collision, or he could apply his brakes and hold to a straight-ahead course, as he did, thus using only one available means of avoiding it, or he could apply his brakes *and* drive onto the right shoulder of the road, thus giving the troubled Proctor a clear roadway and using two available means of avoiding the collision. Only by following the latter course could he discharge his legal duty of using *all of the means at his command* to avoid the collision. Are we prepared to say that a jury could not find that a reasonably prudent person exercising ordinary care in the use of *all the means at his command* to avoid the collision would have used both available means of avoiding the collision? That is precisely what the majority have held.

In spite of what appears to me to be an erroneous holding on the discovered peril phase of the case, the majority have affirmed the judgment of the Court of Civil Appeals. I concur

in the judgment entered, but only because of the trial court's failure to submit the discovered peril issues.

Opinion delivered July 13, 1960.

MR. JUSTICE SMITH concurring.

The judgment of the court which remands this cause to the trial court for a new trial is correct in that the trial court committed reversible error, as pointed out by this court in the admission of prejudicial evidence. However, I join MR. JUSTICE CALVERT in holding that the issue of discovered periol was raised by the evidence.

Opinion delivered July 13, 1960.

Rehearing overruled October 19, 1960.