Opinion filed July 31, 2018



In The

# Eleventh Court of Appeals

_____

## No. 11-16-00198-CR
_____

### SCOTT LAFETTE SIMPSON, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 104th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 19892B**

## M E M O R A N D U M   O P I N I O N

Appellant, Scott Lafette Simpson,[1] was charged in three paragraphs of a single count of an indictment with using a deadly weapon in the commission of aggravated assault of three people, second-degree felonies, and with one count of tampering with evidence, a third-degree felony. The jury acquitted Appellant of one charge of

---

[1]We note that the judgments reflect Appellant's name as Scott Lafayette Simpson.

aggravated assault and convicted him of two charges of aggravated assault with a deadly weapon and one count of tampering with evidence.[2] The jury assessed his punishment at fifteen years' confinement in the Texas Department of Criminal Justice–Institutional Division (TDCJ–ID) in each of the assault cases and five years' confinement in the tampering case. The trial court sentenced him accordingly, with the sentences to be served concurrently.

Appellant brings two issues on appeal, arguing that the trial court reversibly erred in failing to comply with the mandates of Articles 37.04 and 37.05 of the Texas Code of Criminal Procedure[3] and that the evidence is insufficient to support his conviction in the tampering with evidence case. Because the record does not adequately reflect the events relied on in Appellant's argument regarding Articles 37.04 and 37.05, we overrule his first issue. Because the evidence is not sufficient to support Appellant's conviction of tampering with evidence, we sustain his second issue. We reverse and render in part and affirm in part.

### *Brief Facts*

Joshua Ward was standing with his bicycle on a rural Abilene road when a blue Jeep pulling a trailer drove up and stopped. Ward assumed the driver needed directions and walked toward the Jeep. As he approached, the driver, later identified as Appellant, started screaming at Ward, "You caused this s--t, mother f----r," pulled a gun, pointed it at Ward, and then drove off. Ward's wife drove up, and they called

---

[2]*See* TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2011), § 37.09(c) (West 2016).

[3]*See* TEX. CODE CRIM. PROC. ANN. arts. 37.04, 37.05 (West 2015).

.

2

9-1-1 to report the incident. Then Ward and his wife drove toward their home, which was in the same direction Appellant had driven.

Jake Allred, a police officer for the City of Abilene, had not gone to work that day because he was ill. His fiancée was driving him into town to get medicine when they came upon a blue Jeep stopped ahead of them in their lane. A white pickup stopped facing them, and the two vehicles were blocking the road. The driver of the pickup was arguing with a man standing outside the pickup. As Allred and his fiancée inched closer to the Jeep and pickup, the pickup drove off. Allred identified the man from the Jeep as Appellant.

As Allred and his fiancée eased around the Jeep, Allred saw a gun lying on the ground in front of the Jeep. Appellant picked up the gun and came to Allred's window, screaming and pointing the gun at him, his finger on the trigger. Allred yelled at his fiancée to go, and she "peel[ed]" while Allred called 9-1-1 to tell dispatch what was going on. Appellant got into the Jeep and started down the road in the same direction as Allred. Then Allred saw lights and a patrol unit coming toward them from behind. Appellant made a U-turn and started toward the patrol unit. Another patrol unit passed Allred, and the two units boxed Appellant in.

Carye Adkins was a patrolman with the Abilene Police Department, and he received a call for service at approximately 5:30 p.m. to respond to an armed subject. Officer Adkins drove to the reported location of the events Ward had reported. His unit was equipped with a Watchguard video system that recorded both audio and video, and the recording of the events germane to this case was admitted into evidence as State's Exhibit No. 1.

The officer was traveling within the Abilene city limits on Elm Dale, a paved two-lane, undivided road with no improved shoulders, when he passed two white pickups going in the opposite direction. The first pickup did not stop, but the second

did stop, and the driver yelled that there was a guy "acting like an idiot," throwing stuff out in the road. Officer Adkins continued for a short distance, saw the Jeep pulled over on the side of the road, and stopped his unit. The Jeep was no longer pulling a trailer. Appellant got out of the Jeep with his hands behind his head and, following Officer Adkins's instructions, lay down on the road. The officer cuffed Appellant, put him in the back seat of the patrol unit, and advised Appellant of his rights. When he asked Appellant if he was armed, Appellant told him he had thrown the gun out of the Jeep when he saw the officer's lights. Appellant testified at trial that he had dropped the gun because he did not want to get shot by the police, noting that there was a lot of that on television. And Officer Adkins testified that Appellant had told him where the gun was.

Appellant's conduct alternated between calm and bizarre. He would speak rationally with the officer, then scream with fear, begging the officer not to leave him. At times, he seemed convinced the cuffs were tightening on his wrists, then seemed to calm down when Officer Adkins explained the cuffs were locked and could not tighten. But later, he would start screaming again. Officer Adkins described Appellant's condition as possibly intoxicated or under the influence of something, paranoid, just not right, and not always making sense. He was trying to keep Appellant calm. Appellant said that he was afraid people would see him, so Officer Adkins told him he could lie down across the back seat so nobody could see him. Officers searched the Jeep with a dog and found no weapons and no contraband.

Appellant testified that he had gone a "week and a half" without sleep while he was abusing drugs for a couple of months, and heavily on the day of his arrest. He said he had been afraid of the man with the bicycle, and when the man walked toward Appellant's Jeep, Appellant pulled the gun out of his console to protect

4

himself. When Appellant saw that the other man's hands were empty, he put his gun down and swore at the man, telling him that it was his fault Appellant had pulled the gun. Appellant admitted he had probably overreacted.

He testified that, when he saw the lights of a police unit in his mirror, he turned around, stopped, picked up his pistol, and dropped it out the right back window because the passenger window would not go down. He said that he got out of the Jeep with his hands up but that the officer's car went by, leaving him standing there. Appellant got back into the Jeep, put the Jeep in drive, and rolled forward "a little ways." When Officer Adkins stopped, Appellant stopped, got out again, and put his hands up.

Appellant testified that he put the gun out the window because he did not want the police to shoot him. "I mean, they been shooting a lot of people on TV." Appellant testified that the officer did not find the gun at first and that Appellant told him where it was. Appellant testified he was not trying to hide the gun; he just did not want to get shot when the police stopped him. Officer Adkins was the only investigating police officer who testified. He testified that Officer Poynor had located Appellant's gun in the "bar ditch" [sic] and near it, Appellant's identification. Although there is no photograph of the road and its environs, it is clearly viewed in State's Exhibit No. 1.

The arrest was effected in a rural area within the city limits. The road is paved, but there are no curbs and no improved shoulders beside the road. On either side of the road, within the right-of-way, is a stretch of mowed grass referred to as a bar ditch.[4] The grassy area referred to as a bar ditch is an area that slopes away from the road, continuing the slope of the road. It is not a steep slope, but a gradual slope that flattens out after a few feet, then gradually slopes up again, creating a shallow

---

[4]*See Hardy v. State*, 281 S.W.3d 414 (Tex. Crim. App. 2009) (discussion of meaning of bar ditch).

5

channel.  The video that is State's Exhibit No. 1 reveals that vehicles have no trouble driving into the bar ditches to turn around.  The following attachment is a still from State's Exhibit No.1:



*Procedure Employed by the Trial Court in Receiving Verdicts in Violation of Articles 37.04 and 37.05 of the Texas Code of Criminal Procedure*

In his first issue, Appellant argues that the trial court reversibly erred in failing to comply with the mandates of Articles 37.04 and 37.05 of the Texas Code of Criminal Procedure, which provide:

> When the jury agrees upon a verdict, it shall be brought into court by the proper officer; and if it states that it has agreed, the verdict shall be read aloud by the judge, the foreman, or the clerk.  If in proper form

and no juror dissents therefrom, and neither party requests a poll of the jury, the verdict shall be entered upon the minutes of the court.[5]

The State or the defendant shall have the right to have the jury polled, which is done by calling separately the name of each juror and asking him if the verdict is his. If all, when asked, answer in the affirmative, the verdict shall be entered upon the minutes; but if any juror answer in the negative, the jury shall retire again to consider its verdict.[6]

The jury returned verdict forms that reflected confusion and no clear verdict, and the trial judge responded with a note:

Jury —

I have received your verdict sheet.

You did not reach a verdict in Count One, Paragraph Three; and, you reached two verdicts in Count Two.

Please continue your deliberations and reach one verdict in each of the three paragraphs of Count One, and Count Two.

Judge Hamilton

Appellant argues that the record does not reflect the trial judge made either party aware of the confusion apparent in the verdict sheet. Nor does the record reflect that either party was afforded the opportunity to object or otherwise comment either on the verdict sheet or on the additional instruction issued by the trial court to the jury.

---

[5]CRIM. PROC. art. 37.04.

[6]Former CRIM. PROC. art. 37.05 (quote from Article 37.05 as it existed at the time of trial).

The State points out that "[a] verdict must be certain, consistent, and definite. It may not be conditional, qualified, speculative, inconclusive, or ambiguous."[7] "An incomplete or unresponsive verdict should not be received by the court."[8] The State argues that the trial court had a duty to reject an informal verdict, call it to the jury's attention, and either correct the verdict with the jury's consent or send the jury out to consider their verdict.[9]

Article 36.27 of the Texas Code of Criminal Procedure provides:

> When the jury wishes to communicate with the court, it shall so notify the sheriff, who shall inform the court thereof. Any communication relative to the cause must be written, prepared by the foreman and shall be submitted to the court through the bailiff. The court shall answer any such communication in writing, and before giving such answer to the jury shall use reasonable diligence to secure the presence of the defendant and his counsel, and shall first submit the question and also submit his answer to the same to the defendant or his counsel or objections and exceptions, in the same manner as any other written instructions are submitted to such counsel, before the court gives such answer to the jury, but if he is unable to secure the presence of the defendant and his counsel, then he shall proceed to answer the same as he deems proper. The written instruction or answer to the communication shall be read in open court unless expressly waived by the defendant.
>
> All such proceedings in felony cases shall be a part of the record and recorded by the court reporter.[10]

Appellant points out that Articles 37.04 and 37.05 of the Texas Code of Criminal Procedure mandate the actions required of the trial judge under such

---

[7] *Reese v. State*, 773 S.W.2d 314, 317 (Tex. Crim. App. 1989) (citing *Eads v. State*, 598 S.W.2d 304 (Tex. Crim. App. 1980)).

[8] *Id.*

[9] *See id.*

[10] CRIM. PROC. art. 36.27.

circumstances.  He argues that the trial court was required to allow trial counsel the opportunity "to comment and/or object to the trial court's actions.  Here, the record in that regard is silent."

Appellant is correct.  The record is absolutely silent as to any events occurring between the time the jury began its deliberations and the time the jury returned its final verdict.  The record contains notes from and to the jury.  And the verdict form has a strike-through and a note to disregard a "not guilty" verdict on the tampering with evidence portion of the form.  We do not know, from the record, whether the jury and the parties were in the courtroom when the jury returned the faulty verdict forms or whether the faulty verdict was received in chambers or in open court or whether Appellant and counsel or only counsel or no counsel was present when the trial court read the faulty verdict and drafted the note, which is in the record.

Jury—

I have received your verdict sheet.

You did not reach a verdict in Count One, Paragraph Three; and, you reached two verdicts in Count Two.

Please continue your deliberations and reach one verdict in each of the three paragraphs of Count One, and Count Two.

Judge Hamilton

We do not know whether the note was submitted to counsel for comment before it was sent to the jury.  Nor does the record contain any objection to any action by the trial court regarding receipt of the faulty verdict or the trial court's response.  The record reflects only: "Jury deliberating 4:53 p.m. to 6:35 p.m."  Then, in open court, with Appellant and counsel for both sides present without the jury, the trial court stated that it had been advised that the jury had reached a verdict and asked whether each side was ready for the jury to come in.  Neither side voiced any objection to any procedure.  Indeed, neither side stated for the record what procedure had been followed by the trial court in relation to the faulty verdict form.  The trial

9

court placed the judge's note to the jury in the record, but no one explained for the record the circumstances of the note, nor did either side ask the trial court to place a statement of the circumstances in the record.

When the jury returned its final verdict in open court and on the record, the trial judge inquired of the jury whether the verdicts were unanimous and then read the verdicts aloud. Appellant declined the trial court's invitation to poll the jury.

The Texas Court of Criminal Appeals has addressed the rights protected by Article 36.27 in light of a silent record:

> [T]he Supreme Court has never decided that federal constitutional due process principles prohibit an appellate court from presuming on a silent record a trial court's compliance with Article 36.27 requirements (including a defendant's waiver or forfeiture of any objections to a trial court's response to jury questions). Appellant's federal constitutional due-process claim must, therefore, fail even if *Green* erroneously created a state-law presumption of compliance with Article 36.27 requirements on a silent record.
>
> With respect to any state-law claims presented in appellant's [sic] first ground for review, we note that, in stating that it would not speculate about matters not shown in the record, Green relied on former TEX. R. APP. PROC. 50(d), which expressly placed the burden on an appellant to present a record showing error requiring reversal. This Court in *Green* then stated that, "[i]n the absence of a showing to the contrary in the record, we presume the trial court's response was in open court and in appellant's presence" as required by Article 36.27.[11]

Considering the entire record actually before this court, and without engaging in improper speculation regarding the silent record, and applying appropriate presumptions and the proper standard of review, we hold that the record does not support a finding that the trial court committed reversible error in the portion of the

---

[11]*Word v. State*, 206 S.W.3d 646, 651 (Tex. Crim. App. 2006) (alteration in original) (footnotes omitted) (relying on *Green v. State*, 912 S.W.2d 189, 192 (Tex. Crim. App. 1995)).

trial between the jury's being instructed to begin its deliberations and the trial judge's informing counsel and Appellant that the jury had reached a verdict. We, therefore, overrule Appellant's first issue.

*Sufficiency of the Evidence of Tampering with Evidence*

In his second issue, Appellant argues the evidence is insufficient to support his conviction of tampering with evidence charged in count two of the indictment because "the mere fact that Simpson discarded a gun is not necessarily proof sufficient to support beyond a reasonable doubt" all the necessary elements of the offense.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[12]

The jury was instructed:

A person commits Tampering With Evidence if the person knows that an offense has been committed, alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility, or availability as evidence in any subsequent investigation of or official proceeding related to the offense.

To prove that the defendant is guilty of Tampering With Evidence as alleged in *Count Two* [of] the indictment, the state must prove, beyond a reasonable doubt, three elements. The elements are that –

1. The defendant knew that an offense had been committed; and,
2. The defendant intentionally or knowingly altered, destroyed, or concealed the handgun; and,
3. The defendant intended to impair the verity, legibility, or availability of the handgun as evidence in the

---

[12]*Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016).

> investigation or official proceeding related to the offense.

The evidence shows that, after threatening Jake Allred and Joshua Ward with a handgun, Appellant got out of his Jeep and surrendered to Officer Adkins. Appellant testified he saw Officer Adkins's overhead lights in his mirror, turned around, picked up his pistol, and dropped it out the right back window because the passenger window would not go down. He said that he got out of the Jeep with his hands up but that the officer's car went by, leaving him standing there. If a police unit passed Appellant, it does not appear from the video that it was the unit Officer Adkins was driving. Appellant testified he got back into the Jeep, put the Jeep in drive, and rolled forward "a little ways." The video does reflect that, when Officer Adkins stopped, Appellant stopped, got out, and put his hands behind his head.

Appellant testified that he put the gun out the window because he did not want the police to shoot him. "I mean, they been shooting a lot of people on TV." Appellant testified that the officer did not find the gun at first and that Appellant told him where it was. Officer Adkins confirmed Appellant's statement that Appellant told him where the gun was. He also testified that Officer Poynor found the gun and Appellant's ID in the "bar ditch" [sic].

The Texas Court of Criminal Appeals has attempted to tackle the issue of how to determine whether a specific act of discarding an object constitutes tampering with evidence in violation of Section 37.09 of the Texas Penal Code.

> Similarly, in cases of tampering with evidence, not every act of discarding an object evinces an intent to impair the availability of that object as evidence in a later investigation or proceeding. There may be cases in which the most inculpating inference the evidence would support is that the accused simply intended to dispossess himself of the object in order to more plausibly disclaim any connection to it. And while it is true that "it is within the province of the factfinder to choose

12

which inference is most reasonable," it is also true that any inference made by the jury must be supported by sufficient evidence.

. . . [I]f the circumstances were such that the appellant stood absolutely no chance of concealing the pipe from the officers, it is less likely that he would have formulated the intent to conceal the pipe from the officers. In other words, it is less likely (though not impossible) that the appellant would harbor a "conscious objective" to cause a result he knew to be impossible. Therefore, the reasonableness of the jury's inferences about the appellant's intent is informed (at least in some measure) by whether the jury could have reasonably inferred that the appellant believed that the pipe was, in fact, concealable.[13]

Appellant testified he voluntarily submitted to detention by Officer Adkins. The video of his detention and the testimony of Officer Adkins support Appellant's testimony. It is not unreasonable that an armed person would throw down his weapon when surrendering to a police officer. A firearm within the Jeep could reasonably have been seen by an arresting officer as a weapon within the reach of a suspect and a threat to the officer. Not only did Appellant tell Officer Adkins where he had put the gun, he, apparently, explained in some detail how to locate it. Not only did Appellant disarm himself when surrendering to Officer Adkins, he threw his ID out with the gun. He did not throw the weapon into tall weeds or into water. He threw the gun and ID onto the side of the road. Had he intended to hide the gun, there were culverts and vegetation along fence rows on either side of the road. Additionally, the statute requires the further intent to impair the verity, legibility, or availability of the gun as evidence.[14]

---

[13]*Thornton v. State*, 425 S.W.3d 289, 304–05 (Tex. Crim. App. 2014) (footnotes omitted).

[14]PENAL § 37.09(a).

Essentially, Appellant raised a necessity defense,[15] although he did not request a necessity instruction in the jury charge. Appellant's testimony that he believed it was necessary to disarm before surrendering to the police to avoid being shot is evidence of his *mens rea*. Nothing in the record, other than the fact of putting or throwing the gun out of the Jeep, suggests any intent to alter, destroy, or conceal the gun. The fact that he threw his ID out with the gun, that the gun and ID were easily visible in the daylight, and that he told the police where he had thrown or put the gun and ID weigh against a finding of intent to conceal the gun and against a finding of intent to impair the verity, legibility, or availability of the gun. There is no evidence of intent to alter or destroy the gun.

In determining the sufficiency of the evidence, the law is clear that, while the jury is free to disbelieve Appellant's statement that he disarmed to avoid being shot when he surrendered to Officer Adkins, his testimony in that respect is not evidence that the opposite of what he said is true. It is not evidence that he believed he was concealing the gun and his ID when he dropped them out of the Jeep. Nor is it evidence that he dropped them out of the Jeep to make the gun unavailable for the investigation and trial of the aggravated assault offenses.[16] His testimony, and that of Officer Adkins, that Appellant quickly explained to Officer Adkins where to locate the gun, was not evidence that the opposite of what he and Officer Adkins had testified to was true.

Nothing in the record contradicts Appellant's statement that he put the gun out of his car as part of his surrender to the police officer because he did not want

---

[15]*Id.* § 9.22 (West 2011).

[16]*See Schoellmann v. Ammann*, 352 S.W.2d 920, 922 (Tex. Civ. App.—Houston 1962) (citing *R. T. Herrin Petroleum Transp. Co. v. Proctor*, 338 S.W.2d 422, 427 (Tex. 1960) ("[T]estimony from an interested witness, while it need not be accepted as true by a jury, is not evidence that the exact opposite of what the witness said is true.")).

the officer to shoot him, nor is his stated motive for disarming unreasonable or incredible. Additionally, his actions in explaining to the officers exactly where the gun was and tossing his ID near the gun reinforce the credibility of his explanation and defeat the necessary element of intent to impair the verity, legibility, or availability of the gun.

Applying the appropriate standard of review, and carefully considering the entire record, including State's Exhibit No. 1, the video of Appellant's detention and arrest, which could not have been meaningfully transcribed, we hold that the evidence is insufficient to support the *mens rea* element of Appellant's conviction of tampering with evidence as alleged in Count Two of the indictment. We, therefore, sustain Appellant's second issue, reverse the judgment of the trial court as to Count Two only, and render a judgment of acquittal as to Count Two only.

We affirm the judgment of the trial court as to Count One, Paragraph One and as to Count One, Paragraph Two.

LEE ANN DAUPHINOT

SENIOR JUSTICE

July 31, 2018

Do not publish. *See* Tex. R. App. P. 47.2(b).

Panel consists of: Bailey, J.;
Wright, S.C.J., sitting by assignment;[17]
and Dauphinot, S.J., sitting by assignment.[18]

Willson, J., not participating.

---

[17]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.

[18]Lee Ann Dauphinot, Senior Justice (Retired), Court of Appeals, 2nd District of Texas at Fort Worth, sitting by assignment.