**BEATTY et al. v. THOMPSON.**

**No. 11359.**

Court of Civil Appeals of Texas.
San Antonio.

Nov. 24, 1943.

Rehearing Denied Jan. 5, 1944.

Sawnie B. Smith, of Edinburg, for appellants.

Strickland, Ewers & Wilkins, of Mission, for appellee.

MURRAY, Justice.

This suit was instituted by Mrs. Mary Beatty and her children against Guy A. Thompson, trustee of the St. Louis, Brownsville and Mexico Railway Company, to recover damages for injuries to her husband, Joseph H. Beatty, resulting in his death. In the petition it was alleged that the said children had, and thereby, transferred all their claims and causes of action in the premises to their mother. Joseph H. Beatty was killed at a grade crossing on the railroad as a result of a collision between a freight train and his automobile.

The case was tried to a jury; at the close of plaintiff's evidence she announced in open court that she did not seek any issue on original or primary negligence of the defendant or his agents, or operatives of the train, but on the evidence adduced would rely solely upon the theory of discovered peril.

The court then submitted the case to the jury upon the following five issues, which were answered by the jury as indicated, to-wit:

Question No. 1

Do you find from a preponderance of the evidence that before the collision occurred in which the deceased, Joseph H. Beatty, was injured, one or more persons operating defendant's train discovered (a) that said Beatty was in a perilous situation and (b) that said Beatty probably would not extricate himself therefrom in time to avoid injury? Answer "yes" or "no" as to both (a) and (b) separately.

(a) We, the jury, answer yes. (b) We, the jury, answer yes.

If you answered the foregoing questions "yes" then you will answer the following question No. 2, otherwise you need not answer the following question No. 2.

Question No. 2

Do you find from a preponderance of the evidence that such member or members of said train crew after making the discoveries inquired about in the foregoing question, if any such you have found was made, could have avoided the injuries to Joseph H. Beatty, deceased, by the use of all means at hand consistent with the safety of said train and crew? Answer "yes" or "no."

We, the jury, answer yes.

If you answered the foregoing question "yes", then you will answer the following question No. 3, otherwise you need not answer question No. 3.

Question No. 3

Do you find from a preponderance of the evidence that such member or members of defendant's train crew after making such discoveries, if any, failed to use all such means, if any, to avoid injury to Joseph H. Beatty? Answer "yes" or "no."

We, the jury, answer yes.

If you have answered the foregoing question "yes," then you will answer the following question No. 4, otherwise you need not answer question No. 4.

## Question No. 4

Do you find from a preponderance of the evidence that such failure, if any, to use such means to avoid injury as inquired about in the foregoing question was a proximate cause, as that term is hereinbefore defined, of the injuries received by said Joseph H. Beatty on the occasion in question? Answer "yes" or "no."

We, the jury, answer yes.

If you answered the foregoing question "yes" then you will answer the following question No. 5, otherwise you need not answer the following question No. 5.

## Question No. 5

What amount of money, if now paid in cash, do you find from a preponderance of the evidence would reasonably compensate the plaintiff, Mrs. Mary Beatty, for the pecuniary value, if any, of advice and counsel, personal services, support or other thing of value, if any, which she would reasonably have received from her deceased husband Joseph Beatty had he lived? Express your answer in dollars and cents.

We, the jury, answer $6000.

The trial judge after receiving the above verdict of the jury granted defendant's motion and rendered judgment in defendant's favor non obstante veredicto:

From this judgment n. o. v. Mrs. Mary Beatty has prosecuted this appeal.

The appeal presents but one question, that is, were the jury findings supported by evidence?

The defendant's railroad runs through the City of McAllen in an easterly and westerly direction. Old Depot Road crosses the railroad at a right angle within said city. Late in the evening, but before dark, on December 3, 1942, Joseph H. Beatty's automobile stalled on the railroad track at this intersection and was struck by a freight train of some twenty-five cars coming from the west and proceeding in an easterly direction along said railroad track. Beatty died shortly after the collision from the injuries he received. None of the train crew testified at the trial; all the evidence offered as to the facts of the collision came from persons who happened to be near the crossing at the time and were disinterested bystanders.

Eleanor Saenz testified she was riding in an automobile on the main State Highway, which runs through McAllen parallel with the railroad and only a short distance south thereof. She saw Mr. Beatty's automobile standing on the railroad track at the intersection and saw the train approaching. She heard the whistle of the train blowing incessantly. She heard the brakes go on and heard the wheels grinding. She saw Beatty open the door of the car and attempt to escape but before he could get away the train struck the automobile and Beatty was seriously injured. She was questioned as to where the train was when she heard the brakes go on, as follows:

"Q. Where was the locomotive when you heard the brakes go on? A. I was on the corner of the road to turn home.

"Q. Where was the train? A. The train?

"Q. On this side where you saw it? A. On this side of the Cities Service where I said that the switch was."

She had previously testified that when she first saw the train it was on this side (meaning the east side) of the Cities Service building, near a switch block some 160 or 170 feet from the crossing.

She further testified that she first heard the whistle when she was opposite Louis Whitte building and traveled to the Old Depot Road a distance of some 168 feet before she saw the train. She was traveling about ten miles per hour. She heard the train whistling incessantly after the first whistle.

Tom Hardisty testified that he was walking south along Old Depot Road north of the railroad crossing. He saw Beatty drive upon the track and stop. He then heard the train whistling incessantly and saw the collision. He estimated the train was running at a speed of 25 miles per hour when it struck the automobile. He saw Beatty get out of the right-hand side of the car and take two steps when the train struck the automobile, which in turn struck Beatty. He did not see the train until it was in about 50 feet of Beatty, due to intervening buildings.

Mrs. Harry Gailey was on Old Depot Road traveling in the same direction as Tom Hardisty and just behind him. Her testimony was similar to that of Hardisty.

W. J. Banker testified that he was jobber for petroleum products and was owner of the Cities Service Products Company.

He was standing in front of his overhead tank, about 100 to 150 feet from the crossing when the collision occurred. He heard

the train begin a course of continuous whistling and looked down the track to see what was causing the whistling. He saw appellant's car standing on the main track. He did not know where the train was when the whistling began, but he imagined it was some 200 to 300 feet west of where he was standing. He could not see the train until it was almost opposite him, as his building obstructed his view. He said it seemed to him that everything possible was being done to stop the train, and he thought it would stop before it struck the automobile, but it continued on until it struck. The train was brought to a stop about 120 to 150 feet beyond the crossing. The train consisted of from twenty-three to twenty-five freight cars and the engine. It seemed to him that he could have run down to the crossing and pushed the automobile off the track before the train hit it. He admitted, however, that seconds seem like minutes under such circumstances. His estimate as to where the train was when it began the incessant whistling was a mere guess or conjecture.

■ Thus it is seen that there is no evidence as to where the operatives, or any one of them, discovered that Joseph Beatty could not or probably would not extricate himself and his automobile from the position of peril. Appellee's Exhibit No. 1 shows the crossing to be a perfectly level crossing. The car was not stuck on the track in the sense that it had bogged down or become caught between the rails or anything like that. Apparently the slightest shove would have sent the automobile off appellee's track. The operatives of the train had a right to presume that Beatty would drive his automobile off the track and avert a collision, and only when it became evident that he was not going to do so did it become their duty to use all the means at hand to stop the train.

What was said by Williams, J., in **Ft.** Worth & D. C. R. Co. v. Shetter, 94 Tex. 196, 59 S.W. 533, 535, applies here, to-wit:

"A person walking negligently along a railroad track in front of a moving train will surely be hurt unless the train stops, or he gets out of its way. In a sense he may be said to be in danger, but those controlling the train are not required to assume that, by his negligent failure to act, he will remain in danger. It is only when they have realized that he cannot or will not get out of the way that the duty of averting a collision arises."

■ Here the operatives of the train were not required to assume that Beatty would fail to heed the warning of the whistle and drive or shove his automobile out of the way of the train, and it was only when they realized that he could not or would not do so that it became their duty to use all means at hand to stop the train. The evidence does not support a finding that after they realized this fact they failed to use the means at hand to stop the train.

We consider the case of Burlington Rock Island R. Co. v. Pruitt, Tex.Civ.App., 160 S.W.2d 105, on all fours with this case. In that case the Supreme Court refused a writ of error, and if we should do other than affirm the judgment here we would be in direct conflict with the opinion in that case.

The judgment is affirmed.

On Motion for Rehearing.

Appellant in her motion for a rehearing criticizes our statement of the case and contends we should have included other testimony. We have no objection to doing this and here and now add such testimony.

In addition to the facts set forth in our original opinion the record further shows as follows:

The witness Tom Hardisty further testified that "after the car stopped, Beatty seemed to try—it looked like he was trying to choke the car or something; trying to start it, to do something with the dashboard."

In our original opinion, in speaking of the witness W. J. Banker we state, "he could not see the train until it was almost opposite him, as his building obstructed his view." This statement is inaccurate, what the witness did testify to was that from where he was standing he could not have seen the locomotive until it had reached at least the west side of the building, that from where he was standing he could see about 50 feet down the track to the west, about 50 feet from a point opposite him on the north. And, further, in answer to a question as to how far he could see down behind his building, behind his tanks, down the track from the intersection of the Old Depot Road and the Highway, he stated: "I believe about between 150 to 200 feet." Banker further testified that the right of way was straight and unobstructed for at least one-half mile from the Old Depot Road crossing to the west, the direction from which the train was coming, and at

the time of the collision there were no railroad cars or automobiles so parked as to obstruct the view along this right of way. Further, that when Banker heard the incessant whistling and finally looked to see what the trouble was, he believed the locomotive was between where he was standing and the Gulf warehouse down the track; "that would be somewhere around 100 to 150 feet beyond my vision to the west," and that he would say that the locomotive was possibly between 250 and 300 feet from the crossing when the whistling finally caused him to look to see what was the matter.

We feel that these added and corrected findings in no way affect the decision in the case, and having carefully considered appellant's motion for a rehearing we overrule the same.