Opal **GENTRY**, Appellant,

v.

**SOUTHERN PACIFIC COMPANY,**
Appellee.

**No. 507.**

Court of Civil Appeals of Texas.

Corpus Christi.

Dec. 31, 1969.

Rehearing Denied Jan. 22, 1970.

**528**

Cullen, Mallette, Maddin, Edwards & Williams, Harry Maddin, Victoria, Larkin T. Thedford, Edna, for appellant.

Anderson, Smith & Null, Joseph P. Kelly, Victoria, for appellee.

## OPINION

GREEN, Chief Justice.

Separate suits were filed in the district court of Jackson County by Mrs. Opal Gentry and Mrs. Velma Eloise Stanley against defendants Southern Pacific Company and E. R. Weitzel, engineer of the train in question, to recover damages for the deaths of their respective husbands James S. Gentry and Ernest Stanley. Both men were killed in an automobile-train intersection collision, Gentry being the driver of the car and Stanley being a passenger in the car. The cases were consolidated for one trial and judgment. The jury on the trial of the cases as consolidated found negligence and proximate cause on the part of Gentry, the driver of the car, and negligence and proximate cause of the railroad employees, and also answered all issues of discovered peril against defendants. On motion by defendants to disregard the answers to the discovered peril issues, and to render judgment n. o. v. for defendant, the court found that there was no evidence to support the findings of the jury as to the discovered peril issues and sustained defendant's motion to disregard such findings, and rendered a take-nothing judgment as to the plaintiff Mrs. Gentry, widow of the driver of the car. The court rendered judgment favorable to plaintiff Mrs. Stanley, widow of the passenger, based on the independent findings of negligence of the railroad employees, and no findings of contributory negligence of Stanley.

Mrs. Gentry appealed to this Court directly from that portion of the judgment sustaining defendant's motion to disregard the findings of discovered peril, her appeal being our Cause No. 507. The defendants filed in the district court their motion for new trial as to the judgment rendered against them and favorable to the plaintiff Mrs. Stanley, and defendants appealed from the order overruling their amended motion for new trial. (Our No. 516) After both cases had reached this Court, an order was entered by us consolidating the two appeals for purposes of briefing and oral argument. For purposes of disposition, we are setting aside such consolidation, and ordering the causes severed. The case now under consideration is the appeal of Mrs. Opal Gentry from the take-nothing judgment rendered n. o. v. against her.

▉ The sole point of error of appellant Gentry is that the trial court erred in disregarding the findings of the jury to the discovered peril issues (special issues Nos. 10–15 inclusive in the court's charge), and in rendering judgment for defendants and against appellant. Appellees reply by two counterpoints, to the effect (1) that there was no evidence to support the jury's answers to special issues 13, 14 and 15 of the discovered peril series, and in the alternative, (2) that such answers were against the great weight and preponderance of the evidence. It is out opinion that the appellant's point of error should be overruled, and appellee's no evidence counterpoint should be sustained. In reaching this conclusion, we have applied the rule that the evidence is to be considered in its most favorable light in support of the plaintiff's case. Anderson v. Moore, Tex.1969, 448 S.W.2d 105; Triangle Motors of Dallas v. Richmond, 152 Tex. 354, 258 S.W.2d 60.

The accident in question occurred when the front end of the locomotive (Diesel) hit the automobile in which Gentry and Stanley were riding as the automobile was crossing the single set of railroad tracks at the intersection of said tracks and paved Farm to Market Highway 234 at the small

community of El Toro in Jackson County. The crossing at this site was protected by an automatic clearly visible electrical signal device giving forth both visible and audible signals of the approach of the train, and the undisputed evidence was that the signals on such device were functioning properly on the occasion in question. The only eyewitnesses to the events leading to the accident were, so far as is disclosed in the record, in addition to the deceased Gentry and Stanley, the engineer and acting fireman, and it was upon the testimony of these two members of the engine crew together with expert evidence from an experienced engineer of another company that the plaintiffs relied in order to raise the fact issues pertaining to the doctrine of discovered peril.

E. R. Weitzel testified substantially as follows:

He was the engineer on this occasion. His train, in addition to the four-unit diesel engines, consisted of seventy four loaded and forty empty freight cars and a caboose. He and the acting fireman, J. J. Forman, were in the first of the four units. The train had left Houston that morning and was travelling in a westerly direction towards Victoria. The day was clear and visibility was good. About 3:45 P.M., shortly after passing through Edna and when the head engine was approximately one thousand feet from the El Toro crossing, Forman, who was occupying the left hand seat of the cab, told him "There will be a car coming." At this time the train was travelling about thirty nine or forty miles per hour, and had just passed the whistle board which was a quarter of a mile east of the El Toro crossing. The air horn on the locomotive was being blown, and continued to blow until after the collision, and the bell on the engine was being rung and also continued to ring. At the time Forman made this remark Weitzel did nothing to prepare to stop or slow down the train other than to place his hand on the emergency brake, as he had no idea of any peril. He knew that the only way he

could avoid colliding with a car on the track at the crossing provided one should be there when the engine would be due to reach that point, was by reducing the speed of the train, as there was no evasive action he could take; and he further knew that after he passed a point three or four hundred feet from the crossing he could do nothing effective to stop or slow the train in time to avoid a collision. However, he did not know any facts to cause any realization that a car was in danger of collision in time to take any action to avoid the collision. He assumed that the car which Forman had spoken of would be guided by the warning signals at the crossing.

At a point about one hundred feet from the crossing, the acting fireman Forman yelled: "You are going to hit us, stop." Weitzel then immediately placed the brakes in emergency, but at that distance it was too late to slow the speed of the train or do anything to avoid the collision. The head engine, with the emergency brake on the train, actually went over two thousand feet beyond the crossing before it stopped.

He, Weitzel, did not see the automobile before the collision; he relied on the fireman to give him any information of any car approaching from the left side of the train.

The witness J. J. Forman testified in substance:

He was a brakeman employed by Southern Pacific, and on this occasion he occupied the fireman's seat on the left side of the cab in the absence of the regular fireman. His duties included keeping a sharp lookout forward and to the left as the train proceeded along. When the head engine in which he was riding with the engineer was about one thousand feet from the El Toro crossing, he noticed a car coming fast toward the crossing, at a distance when he first saw it of about two thousand feet from the crossing, and travelling about sixy to sixty-five m.p.h. He estimated the speed of the train at thirty-seven or thir-

ty-eight m.p.h. When he first saw the car he told the engineer: "We got a car coming up on my side pretty fast. Blow your whistle for all it is worth." At that time, since the engine had just passed the whistle board for the El Toro crossing, the whistle was blowing loudly and the bell was being rung, and this continued until after the accident. He continued to watch the car while the train travelled several hundred feet, and neither the train nor the car seemed to change speed. He did not suggest to the engineer that he slow down or apply the brakes, nor did he apply the brake handle on his side which would have placed the braking system in effect, as he could see that the automatic signal device at the crossing was working, he knew that the horn and bell on the engine were giving their signals of noise, and he knew that the car had more than sufficient time to stop before reaching the crossing. When the head engine of the train got to about three hundred feet of the crossing, and thereafter for about 200 feet, his view of the car and the road became obstructed by trees and underbrush. The car was still several hundred feet from the crossing when he lost sight of it, and had more than sufficient time to stop. The warning signals at the crossing were properly operating, as well as those on the engine, and he did not think it necessary to take any action toward slowing the speed of the train. As the engine emerged from the brush and trees which had obstructed his view, about one hundred feet from the crossing, he saw the car still coming at a high rate of speed, and realizing the danger to it, shouted for the engineer to stop. The engineer immediately applied the emergency brakes, but it was by then too late for the braking system to slow down the speed of the train before it arrived at the crossing. The brakes on the automobile were also applied, laying down skid marks, then released, and the car proceeded onto the crossing in front of the engine and the collision occurred. Both of the occupants of the car were killed.

■ Wayne Miller, called as a witness by plaintiffs, was at his barn which he estimated to be from one hundred fifty to two hundred yards south of the crossing. He was loading some horses on a trailer to take to a rodeo. After the collision had occurred, he heard the bell of the crossing control device ringing, and saw the train blocking the intersection, but he did not at any time hear any audible signals given by the train itself. He did not state that he was in a position to hear such engine signals, nor that he would have heard them if they had been given, nor that the engine bell and horn were not being sounded before the collision. He just did not have any recollection of having heard them. This was not probative evidence that the horn and bell on the engine were not being sounded.

Henry W. Dillard, called as a witness for plaintiffs, testified among other things substantially as follows:

For twenty years, he had been an engineer and fireman for the Missouri Pacific Railroad Company, and was familiar with the operation of railroad diesel engines such as the one in question. He was also familiar with the customs and general practices of operators of them. The practice in the industry was that when a fireman on a train operating at the speed of this train according to the testimony of the fireman and engineer approached an intersection regulated by flashing lights, and when about one thousand feet from the crossing saw a car about two thousand feet from the intersection on a farm to market road speeding toward the intersection at between sixty and sixty-five m.p.h. and giving no indication of slowing down or stopping, the fireman should warn the engineer and the engineer should try to avert the accident by applying his brakes and changing the speed of the train. In this connection, there was evidence that at any time prior to the view of the fireman being obstructed by the trees and brush, the brakes could have been so manipulated,

consistent with safety, as to slow the train sufficiently to avoid the collision.

■ There was other evidence, but we do not consider it especially significant on the discovered peril issues. The jury in answering special issues found the fireman guilty of negligence proximately causing the collision in failing to apply the emergency brake on the train, and found the engineer guilty of negligence proximately causing the collision in failing to reduce the speed of the train. We are not called upon in this case to pass upon the legal or factual sufficiency of the evidence to support such findings, as the jury found deceased Gentry, the driver of the car, to be guilty of several acts of negligence proximately causing the collision, and this suit is to recover damages for his death. However, contributory negligence is not a defense where the doctrine of *discovered peril* is applicable under the evidence. All of the issues of the series concerning discovered peril were answered favorable to plaintiffs, the jury in answer to special issues Nos. 10–15 making the following findings:

(10) Immediately prior to the collision in question, James S. Gentry and Ernest Stanley were in a position of peril. Position of peril was defined in the court's charge: "It does not mean that it is necessary that bodily injury will certainly be suffered by a person. A person is in a position of peril whenever he is pursuing a course or is in a position which will probably terminate in bodily injury to him, and from which he cannot, or may not in all probability extricate himself."

(11) The engineer or fireman, or one of them, discovered their peril. (12) The engineer or the fireman realized that Gentry and Stanley in reasonable probability could not or would not extricate themselves from their peril in time to avoid injury. (13) Such discovery and realization of such peril was within such time and distance that by the exercise of ordinary care and the use of all of the means at their command, consistent with their safety and that of the train and its contents, the engineer or the fireman could have avoided the collision. (14) The engineer or the fireman failed to exercise ordinary care to use all of such means to avoid the injury to the parties in the car. (15) Such failure was a proximate cause of the death of the occupants of the car.

We quote from the case of Texas & New Orleans Ry. Co. v. Hart, 1962, 163 Tex. 450, 356 S.W.2d 901, at pp. 905–906, certain rules and requirements of proof in discovered peril cases, as follows:

"In a discovered peril case, it is necessary for plaintiffs to prove that the defendant *actually* discovered and realized their perilous position in time to have avoided the collision by the exercise of ordinary care in the use of all the means at their command. Parks v. Airline Motor Coaches, 145 Tex. 44, 193 S.W.2d 967 (1946). It is not sufficient that the defendant *should have* discovered, or *should have* realized, the perilous position of the plaintiffs. Safeway Stores, Inc. v. White (1961), 162 Tex. 473, 348 S.W.2d 162; Texas & N. O. R. Co. v. Grace, 144 Tex. 71, 188 S.W.2d 378 (1945). There must be a last chance to avoid the injury, and the last chance must be a clear one. R. T. Herrin Petroleum Transport Co. v. Proctor, 161 Tex. 222, 338 S.W.2d 422 (1960).

On the other hand, the fact of timely realization of the danger may be established by circumstantial evidence. Creech v. Thompson, 156 Tex. 561, 297 S.W.2d 817 (1957). To raise the issue of discovered peril here, it was only necessary for the plaintiffs to show that the defendant realized, in time to have avoided the collision, that plaintiffs were in a position of peril, and were pursuing, and probably would continue to pursue, a course that was likely to result in their being injured. Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W.2d 561 (1952); Safeway Stores, Inc. v. White,

cited just above; Galveston, H. & S. A. Ry. Co. v. Wagner (Tex.Com.App.1927), 298 S.W. 552. The quantum of proof required of the plaintiffs on these elements of discovered peril, in order to entitle them to have the jury pass upon them, was such facts and circumstances as, taken together with all reasonable inferences therefrom, constituted some evidence of probative force of their existence. Ford v. Panhandle & Santa Fe Ry. Co., cited just above." (Emphasis supplied.)

The issue to be decided from the evidence is *not* whether a member of the engine crew should have timely discovered and realized that a perilous position existed. The issue before us is: was there evidence introduced from which a jury could reasonably decide that one of the engine crew *did actually* discover and realize that the car and those in it were in a position of peril, as that term was defined in the court's charge, *in time* to have avoided the collision by the use of all the means at his command, consistent with safety of the train.

The evidence showed without dispute that at some time prior to the collision, specifically within the last hundred feet of the train's progress before the accident, the automobile and its occupants were in a position of peril, which fact was discovered by the engine crew who realized at that time that the occupants of the car in reasonable probability would not and could not extricate themselves in time to avoid injury. Hence special issues Nos. 10, 11, and 12, which were not limited by any time period other than just prior to the collision, were properly answered in the affirmative. We find no evidence in the record to establish a fact issue that the engine crew could do anything to avoid the collision after the engine came within one hundred feet of the crossing, or, as testified to by the fireman, after the engine came from behind the brush and trees so that he again saw the approach of the car. It is Special Issue No. 13, and the answer of the jury thereto (supra) which raises the crucial point in the case on appeal.

Special Issue No. 13, with the jury's answer, reads as follows:

"If you have answered Special Issue No. 12 'Yes' and only in such event, then answer:

SPECIAL ISSUE NO. 13

"Do you find from a preponderance of the evidence that the Defendants, or their employees, the engineer or the fireman, discovered and realized such peril of James S. Gentry and Ernest Stanley within such time and distance, that by the exercise of ordinary care and the use of all of the means at their command, consistent with their safety and that of the train and its contents, they could have avoided the collision? Answer 'Yes' or 'No'

We, the Jury, answer YES"

Considering the evidence in its most favorable light to appellant, the car and its occupants were not shown to be in a position of peril, as the term was defined in the court's charge, when the engine crew first saw it about fifteen hundred or two thousand feet from the crossing. Nor was the car and its occupants in such perilous position when the view of the fireman became obscured by brush. From all of the evidence in the case, as well as the reasonable deductions to be drawn therefrom, we conclude that the engine crew had the right to assume, until the contrary appeared, that the driver would stop the car before reaching the intersection, which was protected by the automatic signal device. We copy as follows from Texas & New Orleans Ry. Co. v. Hart, 356 S.W.2d p. 908 supra, the quote being taken in that opinion from Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W.2d 561, 567:

"When the fireman first discovered the approach of the automobile he had a right to assume that the driver would stop it (the car) before reaching the crossing. Both ordinary care for his own safety and Article 6701d, Sec. 86 (d), Vernon's Ann.Civ.St. required that he stop it. * * *"

See, also, Sisti v. Thompson, 149 Tex. 189, 229 S.W.2d 610, 614; Beatty v. Thompson,

Tex.Civ.App., 176 S.W.2d 795, 797, wr.ref. w. o. m.; Arnold v. Busby, Tex.Civ.App., 298 S.W.2d 627, wr.ref. n. r. e.

Of course the jury was at liberty to disbelieve the testimony of defendant railroad's engineer and acting fireman, or believe any portion and reject any other portion. But the fact that any part of their testimony might be disbelieved is not evidence that the opposite of what they said is true. Safeway Stores, Inc. v. White, 162 Tex. 473, 348 S.W.2d 162; Ford v. Panhandle & Santa Fe Ry. Co., Tex.Sup. supra; Creech v. Thompson, 156 Tex. 561, 297 S.W.2d 817. There must be other facts and circumstances, or the testimony of other witnesses in evidence, to supply that which has been rejected when the question to be determined is whether the case made is one which in law is sufficient to fix liability. Texas & N. O. R. Co. v. Grace, 144 Tex. 71, 188 S.W.2d 378, quoting from Texas & Pacific Railroad Co. v. Brown, 142 Tex. 385, 181 S.W.2d 68, 72; Heavy Haulers Inc. v. Precise, Tex.Civ. App., 348 S.W.2d 653, wr.ref. n. r. e.

The record on appeal does not present any evidence of probative force that either member of defendant railroad's engine crew *actually* discovered and realized that the car and its occupants were in a position of peril as that term was defined in the court's charge, supra, in time to have done anything which would have averted the collision. In this connection, we quote further from *Hart*, supra, as follows:

"* * * This Court has held that the basis for recovery on discovered peril rests on humanitarian doctrines: a person seeing another in a position of peril, and recognizing the danger in time to avoid it, nonetheless negligently fails to use the means at hand to avoid it. The dereliction of duty alleged, it is said, is an act of inhumanity which should never be imputed in the absence of competent evidence warranting an inference of guilt. Texas & N. O. Ry. Co. v. Grace, 144 Tex. 71, 188 S.W.2d 378 (1945). Parks v. Airline Motor Coaches, 145 Tex. 44, 193 S.W.2d 967 (1946); Sugarland Industries v. Daily, 135 Tex. 532, 143 S.W.2d 931 (1940); Schuhmacher Co. v. Posey, 147 Tex. 392, 215 S.W.2d 880 (1949). It is our own opinion that a pause of a second or so, or a second or two, on the part of the fireman as he watched the girls approach at 35 to 40 m. p. h., and realized their position, was not under the circumstances sufficient to raise the issue of discovered peril."

We hold that there is no evidence of probative value in the record to support the submission of Special Issue No. 13, or the jury's answer thereto. Since actual discovery and realization of plaintiffs' perilous position in time to have avoided the collision are essential components of the discovered peril doctrine (*Hart*, supra) the trial court properly rendered judgment n. o. v. against appellant.

Judgment affirmed.

NYE, Justice (dissenting).

I respectfully dissent. The appellant's no evidence point is governed by the rule that requires the appellate courts to view the evidence in the most favorable light to the appealing party; to consider only evidence and inferences which support the findings of the jury; and to reject all the evidence and inferences which are contrary to such findings. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951); Calvert's "No Evidence" and "Insufficient Evidence" Points of Error, 38 Texas Law Review 361. Applying this rule then, to all of the direct and circumstantial evidence contained in the record, I would uphold the jury's findings on the discovered peril issues.