Opal GENTRY, Petitioner,

v.

**SOUTHERN PACIFIC COMPANY,**
Respondent.

No. B–1997.

Supreme Court of Texas.

July 15, 1970.

Rehearing Denied Oct. 7, 1970.

———◆———

Cullen, Edwards, Williams & Stevenson, Donald A. Edwards, Victoria, for petitioner.

Anderson, Smith & Null, Conde N. Anderson and Joseph P. Kelly, Victoria, Thomas R. Bell, Edna, Jack Salyer, Bay City, Kilgore, Cole & Garrett, Emmett Cole, Jr., Victoria, Robert S. Pieratt, Houston, for respondent.

McGEE, Justice.

This is an automobile-train collision case involving an application of the doctrine of discovered peril.

Mrs. Opal Gentry filed this action against Southern Pacific Company to recover money damages for the death of her husband, James Gentry, who was killed in the collision. The jury found that the engineer and fireman operating the train at the time of the accident were guilty of primary negligence; that there was contributory negligence on the part of the deceased driver of the automobile; and that each of these acts of negligence was a proximate cause of the collision. The jury also found all discovered peril issues in favor of plaintiff.

The trial court sustained defendant's motion to disregard the answers to the discovered peril issues, and rendered judgment non obstante veredicto in favor of the Railroad. The take-nothing judgment against the plaintiff was affirmed by the court of civil appeals. 449 S.W.2d 527. We affirm the judgment of the court of civil appeals.

In this Court, petitioner, Mrs. Gentry, urges a single point of error, to-wit: The court of civil appeals erroneously held that there was no evidence of probative force to support the submission of Special Issue No. 13 of the discovered peril issues and in affirming the judgment of the trial court non obstante veredicto against plaintiff. This narrows the ultimate question to whether there was *some evidence* from which the jury could reasonably infer that either the fireman or the engineer *actually did discover and realize* that the decedent was in a position of peril, *in time to have avoided the collision* by the use of all the means at his command, consistent with the safety of the train and its crew.

We will review the evidence and the inferences therefrom in the light most favorable to plaintiff and in support of the jury's answer. Triangle Motors of Dallas v. Richmond, 152 Tex. 354, 258 S.W.2d 60 (1953); In Re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951); and cases hereinafter cited.

The accident occurred near the small community of El Toro, Texas, on March 6, 1965, at approximately 3:45 p.m. The weather was clear. The automobile was traveling in a northerly direction on Farm to Market Road 234, with the train traveling in a westerly direction at approximately right angles. As the automobile approached the crossing there were five warnings: (1) a round sign on the shoulder of the road bearing an X with the letter R on each side of the sign; (2) an X, with an R on each side, painted on the surface of the portion of the road being traveled by the deceased driver; (3) cross arms with two flashing red lights; (4) the engine's horn or whistle; and (5) the engine's bell. The undisputed evidence shows that the audible and visual warning devices were functioning properly on the occasion.

The engineer, Mr. Weitzel, testified in substance as follows: the compartment from which the train is operated by the engineer is located in the first engine or unit. The particular unit involved in the accident is a 1500 horsepower diesel electric locomotive. The entire train consisted of four units, a caboose, and one hundred and fourteen cars, seventy-four of which were loaded and forty empty. The engineer occupies the right side of the unit and the fireman is located on the left. The primary duty of the fireman is to maintain a constant lookout for obstructions on the tracks to the left-front of the train, and to alert the engineer of traffic that is approaching the railroad-highway crossings from his side.

Traveling at a speed estimated to have been 39 or 40 miles per hour, the lead unit approached the whistle board located one-fourth of a mile east of the intersection.

A whistle board is a railroad marker designed to inform the engineer of an upcoming crossing, and alerts the engineer to the necessity for blowing the air horn as a warning to approaching traffic. At that time Weitzel commenced blowing the air horn. When the unit was approximately 1,000 feet east of the crossing the fireman, Forman, said that "he saw an automobile." Weitzel continued to blow the air horn, and he also turned on the bell ringer. He did nothing else, because, as far as he knew, that was all there was to do. He looked to the left but could not see the car, possibly because "there were trees that might have been in the way." Although such size trains as this one do not "stop on a dime," he never had reduced the speed of any train in an effort to avoid a collision. Weitzel did nothing to prepare to stop or slow the train other than to place his hand on the emergency brake without applying it. He knew that the only manner in which he could avoid a collision with a car on the track at the crossing should one be there, was by reducing the speed of the engine, because he could not take any evasive action on a train track. The speed of the train could have been reduced somewhat before reaching the crossing, if he had applied the brake when the fireman had first alerted him of the oncoming automobile, which was at a point 1,000 feet from the intersection. He knew that once he passed a point three or four hundred feet from the crossing, he could do nothing effective to stop or slow the train in time to avoid a collision. At a distance of about 100 feet east of the intersection the fireman called out, "They are going to hit us, stop," and then "put the brakes into emergency on the unit." It was too late. The lead unit, even with the emergency brake on, traveled over two thousand feet beyond the point of impact, pushing the automobile along in front of it. In conclusion, Weitzel stated that he never did see the automobile, but rather, that he relied on the fireman to give him any information of any car approaching from the left side of the train.

The fireman, Forman, testified: that he was actually a brakeman, but that he was serving as fireman on March 6, 1965. He knew that he must maintain lookout for any obstructions forward and to the left of the diesel locomotive, and to alert the engineer of the traffic approaching an intersection from his side of the train. He first noticed the Gentry automobile when the lead unit was about 1,000 feet from the crossing, the vehicle then appearing to be about 2,000 feet or a little better from the intersection. Forman estimated the speed of the train to be approximately 37 or 38 miles per hour, and that of the automobile to be about 60 or 65 miles per hour. This was just after the train had passed the whistle board, so the engineer had already begun to blow the air horn. At this point in time he turned to the engineer and said, "We got a car coming up on my side pretty fast." After the enginner blew the whistle again, Forman told him, "blow your whistle for all it has got." From that point, for approximately 700 feet, viz., until the train was about 300 feet east of the crossing, the fireman watched the vehicle in its approach to the intersection, observing all the while that the car did not appear to be reducing its speed. At 300 feet from the crossing, due to the brush, he lost sight of the automobile. At that time the auto was about 500 or 600 feet from the crossing. When the train reached the area immediately beyond this brush, the automobile again came into view. Forman testified "until we got right at the crossing I seen he could not stop, so that's when I told the enginner to stop." But the locomotive was a mere 100 feet from the crossing, and application of the emergency brake at this point was too late.

■ In the court's charge, position of peril was correctly defined as follows:

"It does not mean that it is necessary that bodily injury will be suffered by a person. A person is in a position of peril whenever he is pursuing a course or is in a position which will probably termi-

nate in bodily injury to him, and from which he cannot, or may not in all probability extricate himself."

All of the issues in the discovered peril series were answered favorably to the plaintiff. The jury findings were that: Nos. (10) immediately prior to the time of the collision in question, Gentry was in a position of peril; (11) the engineer or fireman, or one of them discovered his peril; (12) defendants, or their employees, the engineer or the fireman, realized that Gentry, in reasonable probability could not or would not extricate himself from his peril in time to avoid injury; (13) the defendants or their employees, the engineer and fireman, discovered and realized such peril of Gentry within such time and distance, that by the exercise of ordinary care and the use of all of the means at their command consistent with their safety and that of the train and its contents, they could have avoided the collision; (14) defendants, or their employees, the engineer or the fireman, at that time and on the occasion in question failed to exercise ordinary care to use all of such means to avoid injury to Gentry; and (15) such failure was a proximate cause of the death of Gentry.

■ The submitted issues of discovered peril were properly phrased and contain all of the controlling issues to support a judgment for plaintiff under this doctrine. The burden of proof of every one of these issues rested upon the plaintiff. It is not sufficient that the defendant *could have* or *should have* realized the perilous position of the plaintiff, but rather, plaintiff must show *actual* discovery and realization by defendant *in time to avoid the collision*. Texas & New Orleans Ry. Co. v. Hart, 163 Tex. 450, 356 S.W.2d 901 (1962); Safeway Stores, Inc. v. White, 162 Tex. 473, 348 S.W.2d 162 (1961); Herrin Petroleum Transport Co. v. Proctor, 161 Tex. 222, 338 S.W.2d 422 (1960); Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W.2d 561 (1952); Parks v. Airline

Motor Coaches, 145 Tex. 44, 193 S.W.2d 967 (1941).

■ The quantum of proof required to entitle plaintiff to have the discovered peril issues submitted is evidence of such facts and circumstances, together with all reasonable inferences therefrom as would constitute some evidence of probative force of their existence. Ford v. Panhandle & Santa Fe, supra; Texas and New Orleans Ry. Co. v. Hart, supra.

■ After reviewing the evidence, we are of the opinion that there was no evidence to support the jury's finding (Issue 13) that the engineer or fireman discovered and realized such peril of plaintiff within such time and distance, that by the exercise of ordinary care and the use of all of the means at their command, he could have avoided the collision. It is undisputed that the train could not have been brought to a stop within 1000 feet and the plaintiff does not so contend in this Court. Plaintiff contends that "at all times up until the train was 300 feet from the intersection (which also was the point at which the automobile passed from the fireman's view behind some brush) it could have *slowed* sufficiently to have avoided the collision." There is no evidence concerning the amount of reduction of speed, if any, of the train upon application of emergency brakes of the train at any point within 1000 feet of the intersection.

It is true that the fireman discovered the automobile at a time when the automobile was about 2000 feet and the train was 1000 feet from the intersection. That does not establish that the fireman discovered the plaintiff was in a position of peril at that point of time. The plaintiff had to ignore three visible warnings of the upcoming railroad intersection and the sounding of the horn and bell warning of the train's approach. To so hold, would require more than an inference from the facts and circumstances; it would require the jury to speculate that the fireman would or should

anticipate that the plaintiff would disregard the law and the warnings in heedless disregard for his own safety. It is not enough to show that the fireman saw the plaintiff approaching some 2000 feet or more from the intersection at a speed of 60 or 65 miles per hour. How can it be inferred that the fireman discovered and realized the peril of plaintiff at that distance? We hold, as a matter of law, the plaintiff was not in a position of peril at that time.

When the lead unit of the train was within 300 feet of the crossing and for the next 200 feet as it approached the crossing, the fireman's view of the automobile was obscured. As the train went behind the brush, the automobile was approximately 600 feet from the crossing. We think the same observations made in the previous paragraph are applicable here. Except under most unusual circumstances, the fireman could assume that the driver of the automobile would observe the warning devices and could stop his car within a distance of 600 feet before reaching the track.

The only testimony describing the physical facts at the crossing with reference to obstructions and the pictures in evidence confirm the fireman's testimony that he did not realize that plaintiff was in a position of peril until the train was within 100 feet of the crossing. At that time the fireman shouted to the engineer to stop. The engineer immediately applied the emergency brakes.

Reviewing the evidence in the light most *favorable* to plaintiff, it is our opinion that there is no evidence of probative force in this record which would support the submission of Special Issue No. 13. Absent evidence of actual discovery and realization by the fireman or engineer in time to have avoided the collision, the trial court

properly rendered judgment non obstante veredicto against the plaintiff.

Judgments of the trial court and court of civil appeals are affirmed.